UNITED STATES of America

v.

John HEID, Appellant.

No. 89–3035.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 21, 1989.

Decided June 8, 1990.

Sebastian K.D. Graber, Wolftown, Va., (appointed by this court) for appellant.

Geoffrey Bestor, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman, and Eric B. Marcy, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before EDWARDS, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

John Heid appeals his conviction for assaulting a Deputy United States Marshal in violation of 18 U.S.C. § 111 (1982). Heid contends that he was erroneously convicted for simply going limp as marshals attempted to remove him from the courthouse and that going limp cannot constitute the forcible action necessary to violate section 111. Because it is clear from the indictment, the record of Heid's trial, and the jury instructions that Heid was convicted for other affirmative conduct and not for the passive act of going or remaining limp, we uphold his conviction.

I. BACKGROUND

On June 7, 1988, John Heid and William Wardlaw were watching a hearing in Courtroom 19 on the sixth floor of the United States Courthouse in the District of Columbia. Security measures were high because the hearing involved conditions in a women's prison and the Marshal's Service had received intelligence that a demonstration of some form might occur. Deputy Marshal Donald W. Horton observed that Heid failed to stand when the judge left the courtroom. Heid again refused to stand when the judge re-entered the courtroom, despite Deputy Horton's requests that he do so. Heid stated that he stood for no one but God.

Deputy Horton then asked Heid to step out of the courtroom with him, but Heid refused, saying that he would only leave if carried out. Horton then summoned another deputy marshal, Albert Crew, to assist him in removing Heid from the courtroom. As Horton took hold of Heid, he went limp. Deputies Horton and Crew dragged Heid from the courtroom, whereupon Horton instructed Crew and another deputy marshal, William Pickett, to escort Heid out of the courthouse. Pickett and Crew then dragged Heid, who remained limp, to the stairwell.

As the three proceeded down the stairs, Heid's friend, William Wardlaw, entered the stairwell and became involved in a scuffle as to which there was conflicting evidence. The deputies testified that Wardlaw ran down the stairs shouting at them to let Heid go and that he ran into the backside of Pickett's right shoulder, whereupon Pickett turned and struck him twice in the face. According to the deputies, Heid then entered the fray and tried to tackle Pickett from behind, whereupon Pickett hit him once and subdued him. Heid and Wardlaw, on the other hand, testified that when Heid and the two deputies reached the first landing in the stairwell, Pickett, without provocation, began kicking Heid in the face. They also asserted that when Wardlaw saw Pickett kicking Heid, he shouted at Pickett to stop, and that as Wardlaw approached, Pickett turned and began punching him. Heid testified that he attempted to place himself between Pickett and Wardlaw in order to protect Wardlaw, but that Crew restrained him from doing so.

After the scuffle, Heid and Wardlaw were placed under arrest and subsequently charged with assaulting Pickett in violation of 18 U.S.C. § 111. That section, now amended in immaterial respects, then read as follows:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [federal officer] while engaged in or on account of the performance of his official duties, shall be fined not more than $5000 or imprisoned not more than three years, or both.

Near the end of the ensuing trial, and while the jury was absent, the district court advised counsel that it proposed to instruct the jury that whether Heid's "allow[ing] his body to go limp ... constitutes forcible interference, [was] a question for the jury to decide." Trial Transcript of Sept. 20, 1988 ("Tr. IV") at 6. Counsel for Heid objected to this proposal and asked the court to specifically instruct the jury that merely going and remaining limp could not constitute forcible interference. The court ultimately decided to give neither specific

instruction, choosing to rely on the pattern instructions instead.

During its deliberations, the jury sent out a note that read as follows:

> The adverb, forcibly, is causing excessive concern in determining a verdict. Must we consider the entire indictment as stated in making a decision? Can the Court define forcibly?

Trial Transcript of Sept. 21, 1988 ("Tr. VI") at 8. Heid's counsel again urged the court to affirmatively instruct the jury that going and remaining limp could not constitute forcible conduct, but the court again refused. Instead, it simply reread the relevant portions of its original instructions. The court then asked the jury foreman, "Do you think that covers the points that the jury has in mind?" *Id.* at 9–10. The foreman responded, "Yes, sir, I think so." *Id.* at 10. The jury returned with its verdict twenty-seven minutes later, acquitting Wardlaw but convicting Heid. Heid filed a motion for a judgment of acquittal, which was denied.

## II. DISCUSSION

Heid raises numerous issues in this appeal, only one of which merits discussion. Heid's principal contention is that he was convicted of violating 18 U.S.C. § 111 for simply being limp while the deputy marshals attempted to remove him from the courthouse and that being limp cannot, as a matter of law, constitute the *actus reus* for this crime. Heid specifically points to two alleged errors of the district court. First, the court, in its memorandum order denying Heid's motion for judgment of acquittal, stated that going limp "constituted interference with or impeding or obstructing or resisting the marshals who were performing their duty." *United States v. Heid,* Cr. No. 88–0249–OG, mem. order at 10, 1988 WL 136968 (D.D.C. Dec. 13, 1988). Second, the district court denied Heid's request to instruct the jury that going limp could not constitute the forcible action necessary to violate the statute.

While we seriously question whether the mere act of going limp can constitute the forcible action necessary to violate 18

U.S.C. § 111, we need not reach this issue because the district court's denial of Heid's motion for judgment of acquittal was clearly correct: the jury was properly instructed on the elements of section 111, and our review of the record convinces us that there is no reasonable possibility that the jury could have believed that the mere act of going or remaining limp could constitute the crime with which Heid was charged. Rather, we are persuaded that the jury understood that Heid was charged with assaulting Deputy Pickett in the stairwell, and that it was for this conduct that he was convicted.

The Government, in its opening statement, told the jury that the crime for which the defendants were on trial was the alleged assault on Deputy Pickett in the stairwell. Trial Transcript of Sept. 15, 1988 ("Tr. I") at 29. None of the Government's witnesses ever indicated that Heid was arrested for going or remaining limp, or that this conduct formed the basis for the charge against him. Rather, Deputies Horton, Pickett, and Crew all testified that Heid offered no resistance as he was dragged down the hallway, and that Heid and Wardlaw were arrested and charged for assaulting Deputy Pickett in the stairwell. *See id.* at 47–48, 81–82, 84, 86; Trial Transcript of Sept. 19, 1988 ("Tr. III") at 150–51. The scuffle in the stairwell was characterized during the trial as the "incident" and the stairwell as the scene of the assault. *See, e.g.,* Tr. I at 56–62, 113, 194. Heid's closing argument emphasized to the jury that the Government's case hinged on the assertion that he had assaulted Deputy Pickett in the stairwell. Tr. IV at 33. Furthermore, the closing arguments of both Heid and the Government stressed to the jury that the outcome of the case turned on whether the jury believed the testimony of the deputies or the defendants, which differed only in their account of the events in the stairwell. *See id.* at 27–28, 34–37, 43–49, 63–67.

Finally, the indictment charged Heid with having forcibly assaulted Deputy Pickett. Had the act of going limp been the gravamen of the charge, it would have encompassed all three of the deputies, each of whom had to deal with Heid's limp body either in the courtroom, where Heid allowed his body to go limp, or while dragging him through the hallway and down the stairwell to the landing where the incident occurred. Moreover, Deputy Pickett, the alleged victim of the assault, had no contact with Heid in the courtroom. Tr. I at 46–47. In its instructions to the jury, the court read the indictment and related each element of the offense to Deputy Pickett as the victim of the crime charged. Trial Transcript of Sept. 20, 1988 (jury instructions) ("Tr. V") at 19–21.

Most important, it is clear from the record that the jury was properly charged concerning the elements of the crime. The court adhered to the pattern jury instructions for this offense. *See* L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions* ¶ 14.01 (1989). The court carefully explained to the jury that while any of the several possible acts listed in section 111 ("assaults, resists, opposes, impedes, intimidates, or interferes") could form the basis for a conviction, it could only convict on a finding that force had either been used or threatened: "before you can find the defendant guilty, you must find beyond a reasonable doubt that the defendant acted forcibly." Tr. V at 20–21. The court then defined "forcibly" as the "use of force," including the willful threat or attempt to inflict bodily harm. *Id.* at 21.

Heid argues that the jury's request for clarification as to the meaning of the word "forcibly" indicates that it was confused as to whether being limp could constitute forcible conduct, and that the court therefore erred in refusing specifically to instruct the jury that being limp could not constitute forcible conduct. Where a jury's query demonstrates that it is "confused about a controlling legal principle," the trial court must so instruct the jury as to eliminate the confusion. *United States v. Walker,* 575 F.2d 209, 213 (9th Cir.1978); *see also Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). We see no basis, however, for concluding that the court's answer failed to

provide the necessary guidance, or that the query was prompted by a concern over Heid's "limpness." Whatever the jury had on its mind when it asked its question would depend on how it had resolved the evidentiary conflict concerning the events in the stairwell which, at that point in its deliberations, it must have done. The jury might have believed the testimony of Deputies Crew and Pickett, or the testimony of the defendants, or portions of each.

The fact that the jury acquitted Wardlaw but convicted Heid does not indicate that the jury disbelieved the deputies' testimony. Even if the jury believed their testimony, it could have found that Wardlaw did not bump into Pickett with the intent to forcibly interfere with his performance of his duties. Rather, the jury could have concluded that Wardlaw's momentum carried him into collision with Pickett, but that this contact was unintended. As we have no basis upon which to determine the factual predicate underlying the jury's query, trying to ascertain what the jury was thinking when it asked for clarification of the term "forcibly" is an inherently uncertain enterprise.

For example, the jury might have been uncertain whether the adverb "forcibly" modified each of the verbs in the statute (assault, resist, etc.). Tr. VI at 8 ("must we consider the entire indictment?"). In the alternative, the jury might have been focusing on Heid's acknowledged attempt to insert himself between Pickett and Wardlaw. Heid admitted that he had tried to intervene to protect Wardlaw, *see* Trial Transcript of Sept. 16, 1988 ("Tr. II") at 54, 110–11, 129. Such an attempt, the jury had been told, was entirely consistent with Heid's practice of creative nonviolence. Tr. III at 114–15. The only disagreement in the evidence concerned whether Heid actually made physical contact with Pickett; Heid claimed he had not, despite his attempt to place himself between the two men. The jury thus could have had a number of questions regarding the meaning of the term "forcibly" as applied to Heid's conduct, depending on what it decided had actually occurred.

A further possibility is that the jury's question was addressed to Wardlaw's conduct. For example, the jury might have concluded that Wardlaw inadvertently collided with Pickett, but might have been concerned that this unintended contact could constitute forcible conduct. The court's original instruction had stated that physical force was sufficient, but it also included reference to the defendant's intent, Tr. V at 21 ("willfully threatens or attempts to inflict bodily harm"). The jurors might simply have wanted to have their memories refreshed on this aspect of forcible conduct.

In sum, while we cannot know whether the court's answer fully addressed the specific concerns that prompted the jury's question, the only evidence relevant to the point is the jury foreman's assurance that the court's answer had addressed the points that the jury had in mind. *See* Tr. VI at 9–10. We are thus unpersuaded that the court's reiteration of its definition of forcible conduct was non-responsive to the jury's query. Furthermore, in light of the evidence, the indictment, and the jury instructions, we are satisfied that it is unlikely that the jurors could have considered Heid's limpness to have been an element of the crime with which he was charged, or that the court's answer could have led the jury to the conclusion that Heid's passive conduct could constitute a forcible act.

Finally, while the court may have had a mistaken view of the law, there is no evidence whatever that it made that view known to the jury. The court's proposed instruction that it was for the jury to decide whether going limp was forcible interference is relevant to our inquiry only in that the judge's subsequent observation that "it is possible [Heid's] conviction may have been based upon a finding that he went 'limp,'" *United States v. Heid,* Cr. No. 88–0249–OG, mem. order at 8, 1989 WL 15848 (D.D.C. Feb. 8, 1989), could suggest that other participants (i.e., the jurors) could have entertained and acted on a parallel belief. However, this is far from dispositive. In view of the nature of the charge, the testimony, and the court's specific instructions, we find it implausible

that the jury could have found Heid guilty of violating section 111 on the basis of his decision to become or remain limp.

### III. CONCLUSION

Based on our review of the record, we conclude that there is no reasonable possibility that the jury convicted Heid of assaulting Deputy Pickett because he remained limp while the deputy marshals were attempting to remove him from the courthouse. The conduct of the trial and the court's instructions to the jury made it clear that the jury was being asked to determine whether the defendants had forcibly assaulted Pickett in the stairwell as the Government had alleged. Heid's conviction is therefore

*Affirmed.*