UNITED STATES of America,
Appellee,

v.

Derrek E. ARRINGTON, Appellant.

No. 01–3059.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 2002.

Decided Nov. 5, 2002.

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was A.J. Kramer, Federal Public Defender. Shawn Moore, Assistant Federal Public Defender, entered an appearance.

Elizabeth H. Danello, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Oliver W. McDaniel, Assistant U.S. Attorneys.

Before: TATEL and GARLAND, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Defendant Derrek Arrington appeals from his conviction for using a dangerous weapon—to wit, an automobile—to forcibly assault, resist, oppose, impede, intimidate, or interfere with three United States Park Police officers, in violation of 18 U.S.C. § 111(a) and (b). We reject Arrington's contention that the district court plainly erred in instructing the jury, as well as his contention that the evidence presented at trial was insufficient to sustain his conviction.

I

On May 10, 2000, Arrington was indicted on four counts of violating federal law. Count 1 charged him with using a dangerous weapon to forcibly assault, resist, oppose, impede, intimidate, or interfere with three federal officers engaged in the performance of their duties, in violation of 18 U.S.C. § 111(a) and (b). Count 2 charged him with attempting to murder a federal officer, in violation of 18 U.S.C. § 1114. Count 3 accused Arrington of discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). And Count 4 charged him with unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).

According to the government's evidence at trial, the case began on April 13, 2000, when United States Park Police officers Jonathan Daniels, Martin Yates, and Troy Eliason stopped Arrington's car because it lacked a front license plate. As Arrington produced his license and registration, Daniels observed a small ziplock bag with a residue of white powder on the floorboard. Upon Daniels' signal, the three officers retreated to the rear of the car, where Daniels informed them of the suspected drug paraphernalia and of his intention to ask Arrington and his (unidentified) passenger to get out of the car.

The officers then returned to the front of the automobile and asked Arrington to step outside. When Arrington instead reached for the gear shift, Daniels and Eliason reached through the open driver-side door and grabbed him around the upper body, while Yates leaned in from the passenger's side to turn off the ignition. With all three officers still reaching inside the car, and two of them holding onto his body, the defendant shifted into drive and "floored it." 9/14/00 p.m. Tr. at 36. Although Yates was caught by the frame of the car door, he soon extricated himself, as did Eliason. Daniels, however, was dragged by Arrington's car for at least 50 feet, through an intersection, before he

was able to free himself and fall to the ground.

All three Park Police officers then returned to their cars and pursued Arrington in what became a high speed chase. Arrington eventually lost control of his car and crashed into a curb, whereupon he fled on foot with the officers in pursuit.[1] Daniels and an off-duty Metropolitan Police Department officer who had joined the chase finally caught up with Arrington. Yates and the off-duty officer testified that, during the ensuing struggle, Arrington shot Daniels in the face with a handgun. Yates and the other officer eventually subdued Arrington and arrested him.

Arrington testified at trial in his own defense, and the story he told of his flight from the traffic stop diverged significantly from that of the officers. Arrington testified that he decided to drive off because he felt threatened by the police. According to the defendant, he never had physical contact with any of the officers, and no officer had any part of his body in the car at the time Arrington drove off. After leading the officers on the car chase, Arrington jumped out of his car and began to run. According to Arrington, two officers caught up with him and wrestled him to the ground. During the struggle, a gun

Arrington was carrying in his pocket accidentally discharged, and the bullet hit Officer Daniels.

The jury convicted Arrington on Counts 1 and 4, but deadlocked on Counts 2 and 3—the attempted murder and discharging-a-firearm counts. The latter two counts were retried twice (along with a new, additional count), each trial ending in deadlock. After the third trial, the government dismissed the outstanding counts and the district court sentenced the defendant to 240 months' imprisonment on Counts 1 and 4. Arrington's only challenge here is to his conviction, on Count 1, for violating 18 U.S.C. § 111(a) and (b).

II

Subsection 111(a) provides, in relevant part, that anyone who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [designated federal officer[2]] while engaged in or on account of the performance of official duties," shall be imprisoned for a maximum of three years. 18 U.S.C. § 111(a).[3] Subsection 111(b) increases the maximum penalty to ten years for anyone who (so far as is relevant here), "in the commission of any acts described in [§ 111(a)], uses a deadly or dangerous weapon...." 18 U.S.C. § 111(b).[4]

---

1. At some point during the chase, Arrington's passenger disappeared. Arrington testified that the man leaped from the car just after Arrington began to accelerate. Daniels and Yates testified that he escaped along with Arrington, after the crash. Eliason testified that he saw only one person leave the disabled automobile.

2. Subsection 111(a) covers "any person designated in section 1114 of this title...." Section 1114, in turn, applies to "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)...." 18 U.S.C. § 1114.

3. "[W]here the acts in violation of [the] section constitute only simple assault," § 111(a) states that the maximum sentence of imprisonment is one year rather than three. Under § 111(b), however, "the use of a deadly or dangerous weapon [is] sufficient ... to boost the crime above the level of 'simple assault.'" *United States v. Duran*, 96 F.3d 1495, 1511 (D.C.Cir.1996).

4. In full, the subsection applies to "[w]hoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts

■ Arrington raises two objections to his conviction for violating § 111(a) and (b): first, that the district court gave erroneous jury instructions regarding the elements of both the (a) and (b) offenses, and second, that the evidence presented at trial was insufficient to support his conviction for the (b) offense. In order to evaluate these claims, we first set forth the elements of § 111(a) and (b),[5] a determination we make de novo. We then consider, in Parts III and IV, whether the jury was properly charged and whether the evidence was sufficient to support Arrington's conviction.

■ We begin with § 111(a). As the words of that subsection make clear, to violate its proscription a defendant must: (1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer[6]; (4) while engaged in or on account of the performance of official duties. In addition, the defendant must have: (5) the "intent to do the acts" specified in the subsection. *United States v. Kleinbart,* 27 F.3d 586, 592 (D.C.Cir.1994) (quoting *United States v. Feola,* 420 U.S. 671, 686, 95 S.Ct. 1255,

1264–65, 43 L.Ed.2d 541 (1975)). Finally, as we indicated in *United States v. Heid,* 904 F.2d 69, 71 (D.C.Cir.1990), the adverb "forcibly" in the first element of the offense modifies each of the prohibited acts specified in the second element: that is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc. As the parties agreed at oral argument, so far all of this is common ground between them.

■ We turn next to the elements of § 111(b), and here, too, find some common ground. Again, the statutory language makes clear that, to qualify under this subsection, the defendant must: (1) use a deadly or dangerous weapon[7]; (2) in the commission of any of the acts described in the prior subsection. In addition, although the language merely states that the defendant must "use[ ]" the weapon, the government agrees—as do we—that: (3) the defendant must use the weapon intentionally. *See* Appellee's Br. at 26. As the Supreme Court stated in *United States v. Feola,* "in order to incur criminal liability under § 111 an actor must entertain ... the criminal intent to do the acts therein speci-

---

bodily injury." 18 U.S.C. § 111(b). Neither party suggests that the definition of deadly or dangerous weapon contained in the parenthetical applies here or otherwise informs our consideration of the questions at issue in this opinion. Nor does the alternative to the use of a deadly or dangerous weapon specified in the subsection—i.e., the infliction of bodily injury—apply to this case. The government did not request, and the court did not give, a jury charge regarding this alternative.

5. Both Arrington and the government treat the requirements of § 111(b) as if they were offense elements, rather than sentencing factors, and agree that those requirements (along with the elements of § 111(a)) must be found by a jury. So, too, do those circuits that have considered the question since the Supreme Court held, in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "any fact that increases the pen-

alty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63; *see United States v. Campbell,* 259 F.3d 293, 298 (4th Cir.2001) (holding that § 111(b) is a separate offense from § 111(a) and that use of a dangerous or deadly weapon is an element of the § 111(b) offense); *United States v. Yates,* 304 F.3d 818, 823 (8th Cir.2002) (ruling that "*Apprendi* requires a jury finding beyond a reasonable doubt of use of a weapon or bodily injury as a predicate for imposing a sentence over three years" under § 111(b)).

6. *See supra* note 2 (describing officers protected under § 111).

7. As discussed in note 4 above, § 111(b) sets forth an alternative for this element: the defendant must either use a deadly or dangerous weapon "or inflict[ ] bodily injury."

fied," 420 U.S. at 686, 95 S.Ct. at 1264–65, and the act specified in § 111(b) is the use of a deadly weapon. Accordingly, intent to use the weapon is a necessary element, and a defendant who does so purely by accident does not come within the scope of § 111(b).

We now reach the point of the parties' dispute. The foregoing is sensible enough, Arrington says, when the weapon at issue is one that is inherently deadly, like a gun. But what if the weapon is one that is deadly only if used in a certain manner, like Arrington's car? To this query, the government responds that a distinction between the two kinds of weapons is indeed appropriate. For an object that is not inherently deadly, the government concedes that the following additional element is required: (4) the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner. Appellee's Br. at 19; *see United States v. Murphy*, 35 F.3d 143, 147 (4th Cir.1994); 1 Leonard B. Sand et al., Modern Federal Jury Instructions (Criminal) ¶ 14.01, at 14–25 (2002); 2 Kevin F. O'Malley et al., Federal Jury Practice & Instructions (Criminal) § 24.06, at 68, 71 (5th ed.2000). That is, for a car to qualify as a deadly weapon, the defendant must use it as a deadly weapon and not simply as a mode of transportation.

Arrington, however, asks us to add a fifth requirement. It is not enough, he argues, that a defendant intend to use the object; nor is it enough that he actually use the object in a deadly manner. In addition, Arrington contends, the defendant must *intentionally use the object as a weapon.*

We must state at the outset that, in light of the other elements of the (b) offense, we see little practical difference between the positions of the parties. When asked at oral argument to posit a set of circumstances in which adding Arrington's fifth element would make a difference, the government was unable to suggest one. Arrington, for his part, did propose such a scenario: he contended that without the fifth element, a jury could convict a defendant for using a car merely as a means of escape, rather than as a deadly or dangerous weapon.[8] Although the government agrees that the use of a car merely to effectuate an escape would not qualify under the statute, it contends that its construction of § 111(a) and (b) would exclude a conviction for such use. Appellee's Br. at 20–21. We agree. The use of a car purely for flight would not satisfy the fourth element of § 111(b): that the object be used in a deadly or dangerous manner. Nor would Arrington's scenario satisfy the first element of § 111(a), applicable to the (b) offense by incorporation, because it would not involve the element of force.[9]

In the end, however, the decisive question is not whether the element Ar-

---

**8.** Arrington also contends that without his fifth element, a jury could convict "where a defendant was sitting inside an idling car and punched or threatened to punch a federal officer." Appellant's Br. at 19. In this scenario, however, the car itself would not have been used as a deadly weapon, and hence the conduct would not satisfy the fourth element of § 111(b) as detailed above.

**9.** Arrington further contends that the difference made by his proposed fifth element is reflected in the facts of his case. Although he

concedes that the testimony of the government's witnesses would permit his conviction for using his car as a deadly weapon, he maintains that it is insufficient to permit conviction for *intentionally* using the car as a weapon. We disagree. Officer Daniels testified that at the time Arrington stepped on the gas, Daniels' upper body was inside the car and his arms were around Arrington's neck and shoulders. Given the extent of such physical contact, a jury could reasonably conclude that Arrington knew that stepping on

rington proposes would make any difference in this or other cases, but whether Congress intended it to be an element of the offense. We discern no evidence of such congressional intent. Arrington's proposed element is certainly not suggested by the language of § 111(b), which simply requires that the defendant "use" a deadly or dangerous weapon in the commission of the acts described in § 111(a).[10] Nor is § 111(b) bereft of a *mens rea* requirement. Conviction requires both the intent to commit one of the acts specified in § 111(a), and the intent to use the object that constitutes the deadly weapon. Finally, such evidence of legislative intent as exists counsels against adding anything further. As the Supreme Court noted in *Feola*, Congress intended § 111 to protect federal officers to the maximum extent possible, 420 U.S. at 684, 95 S.Ct. at 1263–64, a consideration that led the *Feola* Court to reject an "unexpressed requirement" that the defendant know that his intended victim is a federal officer:

> [I]n order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer.

*Id.*

Rejecting the "unexpressed requirement" proposed by Arrington, one with an even less persuasive appeal to fairness than that proposed in *Feola*, follows *a fortiori*. In *Feola*, the Court responded with little sympathy to the claim that it would be unfair to convict a defendant who did not know that his victim was a federal officer:

> This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator . . . may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected.

*Id.* at 685, 95 S.Ct. at 1264. Similarly, there is certainly no "snare for the unsuspecting" in the absence of the element sought by Arrington. To convict a defendant of the § 111(b) offense, the jury must find (inter alia) that he forcibly assaulted (or forcibly resisted, etc.) a federal officer, that he did so intentionally, that he used a dangerous weapon in the commission of that act, and that he used the weapon intentionally. Any defendant who engages in such behavior knows "from the very outset that his planned course of conduct is wrongful." *Id.* Accordingly, we have no warrant to impose the "unexpressed" offense element advocated by Arrington.[11]

## III

Having determined the elements of the § 111(b) offense, we now proceed to

---

**10.** *Cf.* 1 SAND ¶ 14.01, at 14–25 ("*If a violation of section 111(b) is charged, add*: Fifth, that the defendant used a deadly or dangerous weapon to commit such acts. . . .").

**11.** In further support of his proposed element, Arrington cites *United States v. Duran*, 96 F.3d 1495 (D.C.Cir.1996), in which we remarked that "the act of using a deadly weapon with the purpose of causing Secret Service agents to fear imminent serious bodily injury constituted a crime punishable by ten years' imprisonment under § 111." *Id.* at 1511. That statement was not intended to

---

the gas would cause the car to injure Daniels seriously, and hence that Arrington intended to use the car as a weapon against the officer.

Arrington's argument that the district court erroneously instructed the jury as to those elements in two respects. The first of these—Arrington's contention regarding § 111(b)'s dangerous weapon element—is readily dismissed. Although the court instructed that the government had to prove both that Arrington committed one of the acts specified in § 111(a) "while using a deadly or dangerous weapon," and that he "intentionally" used the weapon, 9/18/00 a.m. Tr. at 20–21, Arrington contends that the court should also have required the government to prove that he intentionally used his car as a weapon. Since, as we have just held, that kind of intent is not an element of the offense, the court's failure to so instruct the jury did not constitute error.[12]

■ Arrington's second complaint is that the district court erred by failing to instruct the jury that the term "forcibly" in § 111(a) modifies not only the proscribed act of assault, but each of the alternatives as well: that is, the government must prove that the defendant forcibly assaulted, forcibly resisted, forcibly opposed, forcibly impeded, forcibly intimi-

dated, or forcibly interfered with a federal officer. Because Arrington did not object to the court's instruction at trial, we review this complaint solely to determine whether the district court committed plain error. FED. R.CRIM. P. 52(b); *see United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993).

As we have discussed in Part II above, Arrington is correct in contending that the adverb "forcibly" modifies each of the verbs it precedes, and not only "assault." *See Heid*, 904 F.2d at 71; *see also United States v. Schrader*, 10 F.3d 1345, 1348–50 (8th Cir.1993); *United States v. Giampino*, 680 F.2d 898, 902 (2d. Cir.1982); *Long v. United States*, 199 F.2d 717, 718–20 (4th Cir.1952). The government concurs. *See* Appellee's Br. at 29. In order to avoid uncertainty, it is therefore the better practice for the trial court to advise the jury, along the lines approved in *Heid*, that " '[b]efore you can find the defendant guilty, you must find beyond a reasonable doubt that the defendant acted forcibly.' " 904 F.2d at 71.[13] Here, the court did not

12. Arrington also claims that the court exacerbated the alleged error by ambiguously instructing the jury that, to convict, it must find that the defendant intentionally used the weapon "in some manner." 9/18/00 a.m. Tr. at 21. Although we agree that the instruction was ambiguous, it immediately followed the court's explanation that a deadly weapon was a device "capable of inflicting serious bodily

describe a generally applicable element of the § 111(b) offense, but rather to summarize the evidence against defendant Duran. In Duran's case, unlike Arrington's, there was no evidence that the defendant assaulted the officers by attempting to cause them bodily injury, since "there was no evidence that he … even saw them, while he was firing" his weapon. *Id.* at 1509. Instead, the evidence against Duran constituted a different category of assault: attempting to put the officers in fear of imminent serious bodily injury. *Id.*

injury or causing the death of another person," *id.* at 20, and that an "automobile may be considered a deadly or dangerous weapon if used *in this manner*," *id.* at 20–21 (emphasis added). We do not think the jury was misled regarding the "manner" to which the court was referring, and we therefore do not agree that the instruction—to which Arrington did not object—constituted plain error. *See United States v. Gaviria*, 116 F.3d 1498, 1510 (D.C.Cir.1997) ("[W]e have long recognized that one ambiguous part of an instruction may be made clear by another unambiguous part of the same instruction.") (citing *United States v. Lemire*, 720 F.2d 1327, 1339–41 (D.C.Cir.1983)).

13. Better still is this two-sentence pattern instruction:

All of the acts—assault, resist, oppose, impede, intimidate and interfere with—are modified by the word "forcibly." Thus, be-

give such guidance, but rather simply instructed that an essential element of the offense was that "the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with" one of the officers. 9/18/00 a.m. Tr. at 20.

But while we would prefer a more explicit instruction, we cannot say that the instruction given by the district court constituted plain error. Nor need we decide whether the instruction was error at all, because any error certainly was not "plain." To the contrary, the instruction tracked the statutory language, and it is precisely that language that caused us to infer that "forcibly" is applicable to each of the prohibited acts in the first place. Because this construction seems to us to be the obvious reading of the statutory language,[14] the court's use of that language did not constitute plain error.

█ Arrington also argues that the district court further confused the situation because, after reading the above-quoted instruction, it subsequently referred to this element as one requiring "forcible assault," without continuing to name the alternative prohibitions.[15] In context, we think it clear that the judge simply used "forcible assault" as a shorthand for the entire list of prohibited acts,[16] and we expect that the

jury would have understood as much. To the extent that the jury did not understand, however, any confusion was likely to favor the defendant, as it would have caused the jury to believe that proof of a different act—such as forcible resistance or forcible opposition—was insufficient for conviction.

## IV

Finally, Arrington contends that the evidence presented at his trial was insufficient to support his conviction under § 111(b). Our review of such a challenge is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979) (emphasis in original).

█ Although Arrington does not dispute that the evidence was sufficient to satisfy the requirements of § 111(a), *see* Appellant's Br. at 11; Reply Br. at 3 n.1, he contends that it did not meet the additional requirements of § 111(b). In his view, the evidence "established no more than that [he] used his car to try to flee from the officers." Appellant's Br. at 17.[17]

---

fore you can find the defendant guilty you must find, beyond a reasonable doubt, that he acted forcibly.
1 SAND ¶ 14.01, at 14–10.

**14.** *See Long,* 199 F.2d at 719 ("The use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all.").

**15.** *See* 9/18/00 a.m. Tr. at 20 (listing other elements of the offense as requiring, for example: that "at the time of this *forcible assault* the person or persons *assaulted* ... were officers or employees of the United States"; that "the officer employees ... were

engaged in their official duties at the time of the *assault*"; and that "the defendant committed the *assault* while using a deadly or dangerous weapon" (emphasis added)).

**16.** Indeed, Arrington used a similar shorthand in his own appellate brief, frequently reducing the list of prohibited acts from six to three. *See, e.g.,* Appellant's Br. at 1, 3, 9, 10 (characterizing the offense as using a dangerous weapon "to assault, resist, or impede" a federal officer).

**17.** In fact, this claim is inconsistent with Arrington's representation that he does not dispute the sufficiency of the evidence to establish a violation of § 111(a). Under that

There was, to be sure, evidence from which a reasonable jury could have reached that conclusion: namely, Arrington's own testimony that he had no physical contact with the officers and that no part of any of their bodies was in the car at the time he hit the gas. But we are required to view the evidence in the light most favorable to the prosecution, not the defendant, and from that perspective there is no question that a reasonable juror could have found a violation of § 111(b).

The Park Service officers testified that they reached into Arrington's car and grabbed the defendant around his upper body. At that point, Arrington reached down, put the gearshift into the drive position, and "took off"—throwing two of the officers away from the car and dragging another for at least 50 feet through an intersection. Such testimony was sufficient for a reasonable juror to find that Arrington forcibly assaulted the officers, that he did so intentionally, that he used his car in the commission of that assault, that he used his car intentionally, and that he used the car as a deadly weapon. Nothing more is required to sustain a conviction for violating § 111(b).

## V

For the foregoing reasons, we conclude that the district court did not plainly err in charging Arrington's jury regarding the elements of 18 U.S.C. § 111(a) and (b), and that the evidence was sufficient to sustain his conviction. The judgment of the district court is therefore

*Affirmed.*

---

subsection, the defendant must have committed the prohibited acts "forcibly," a description that is inconsistent with Arrington's "mere flight" theory.