**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-2657 and 13-3068
_____

UNITED STATES OF AMERICA

v.

ALFRED DAVIDSON,

Appellant in No.:  13-2657


UNITED STATES OF AMERICA

v.

LAMORTHE DELVA,

Appellant in No.:  13-3068


On Appeal from the District Court
Of the Virgin Islands – Appellate Division
(District Court Nos.  3-12-cr-00036-001 and 3-12-cr-00036-002)
District Judge:  Honorable Curtis V. Gomez


Submitted under Third Circuit LAR 34.1(a)
on May 13, 2014


Before:  RENDELL, FUENTES and GREENAWAY, JR., <u>Circuit Judges</u>


(Opinion filed:  May 23, 2014)

## O P I N I O N

RENDELL, Circuit Judge:

Alfred Davidson and Lamorthe Delva ("Appellants") appeal the judgments of conviction entered by the United States District Court for the Virgin Islands, Division of St. Thomas and St. John.[1] For the reasons set forth below, we will affirm.

I.

On November 2, 2012, Customs and Border Protection ("CBP") Officer Glenn Rogers received an anonymous tip that illegal aliens were in the Estate Zootenval area on the island of St. John in the United States Virgin Islands. Officer Rogers and two other CBP officers went to investigate. At about the same time, National Park Service Ranger David Horner received information that illegal aliens were in the Haulover beach area of St. John. Ranger Horner went to the area and found life jackets and clothes in bushes. While leaving the area, Ranger Horner passed a silver pickup truck parked on the side of the road. He saw two people come out of the bushes who seemed to duck as they saw him. Ranger Horner sent this information to the CBP officers and told them that the truck was headed in the officers' direction. The CBP officers formed a road block to stop the truck. The truck ultimately came to a stop. Two of the officers saw Delva exit the front passenger seat of the truck and run through some bushes. Davidson, the driver of the

---

[1] Davidson and Delva have filed separate appeals (No. 13-2657 and No. 13-3068) but we will address them together as they involve the same set of facts and the same jury trial.

truck, was arrested and taken to the CBP office where he gave a statement regarding the day's incident. The five other passengers in the truck were later identified as Haitian immigrants who had come to St. John illegally. Delva was arrested several days later after being identified by Davidson.

On December 6, 2012, a federal grand jury issued an indictment charging Delva and Davidson with one count of aiding and abetting the transportation of illegal aliens (Count One), in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and Davidson with one count of assault with a deadly weapon on a federal officer (Count Two), in violation of 18 U.S.C. §§ 111(a)(1) and (b). The case went to trial before a federal jury that found both Davidson and Delva guilty of Count One and Davidson guilty of Count Two. Davidson and Delva appeal their judgments of conviction.

## II.[2]

Appellants argue that the evidence at trial was insufficient to support their convictions and that the District Court should have granted their Rule 29 motions for a judgment of acquittal. Davidson further argues that his Rule 33 motion for a new trial should have been granted because the District Court erred in: (1) admitting, through the testimony of a CBP officer, a statement Davidson made upon his arrest; (2) declining to instruct the jury on the defense of justification; and (3) failing to voir dire prospective

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Although Davidson and Delva have completed the terms of imprisonment to which they were sentenced, their appeals are not moot because their terms of supervised release have not expired. *See United States v. Jackson*, 523 F.3d 234, 241 (3d Cir. 2008) (explaining that a defendant may appeal his conviction even after his term of imprisonment has ended if he is still serving a term of supervised release).

jurors on whether they would give more weight to the testimony of a law enforcement officer than to the testimony of a private citizen. We will affirm Appellants' judgments of conviction.

## A. Sufficiency of the Evidence

"We exercise plenary review over a district court's grant or denial of a motion for acquittal based on the sufficiency of the evidence, applying the same standard as the district court." *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008). "We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (internal quotation marks omitted). Our review is "highly deferential." *Id.*

### 1. Transporting Illegal Aliens

To sustain a conviction under 8 U.S.C. § 1324(a)(1)(A)(ii), the government must prove that: "(1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law." *Silveus*, 542 F.3d at 1002. Davidson and Delva argue that there was insufficient evidence at trial to establish that they "knew of or recklessly disregarded the fact" that the individuals they transported were illegal aliens, and that they were acting "willfully in furtherance of the alien[s'] violation of the law." *Id.*

We agree with the District Court that there was more than enough evidence presented at trial for a reasonable jury to find Appellants guilty under § 1324(a)(1)(A)(ii). Several pieces of evidence were introduced to prove Appellants' knowledge or reckless disregard of their passengers' illegal alien status. One of the illegal aliens transported by Appellants, Yvener Elizee, testified at trial that Appellants saw him and his family emerging from the bushes where they had been hiding and said, "Look at two Haitians. Let's hold them." (J.A. 73.) Elizee also testified that Delva asked him if he had come from Haiti and when he had arrived. Elizee replied that he had come from Haiti the previous night. From this conversation, a reasonable jury could have concluded that Delva knew that his passengers had entered the United States illegally. The passengers' peculiar location (bushes on the far side of the road) and the time of their arrival into the country suggested illegal activity.

Furthermore, at trial, a CBP officer testified that upon Davidson's arrest, he confessed that he had been driving in the area where the Haitians had taken refuge because a friend (with whom he was driving) had asked him to pick up certain individuals.[3] Given that no one other than Delva and the illegal aliens were identified as having traveled in Davidson's car, it would have been reasonable for the jury to conclude that the "friend" Davidson referred to was Delva. Davidson also stated that on previous occasions he had been paid about a hundred dollars or had been given gas money in exchange for "picking up people." (App. 176.) We agree with the District Court that

---

[3] This prior statement tended to cast doubt over Davidson's claim at trial that he picked up the Haitians because one of the women was pregnant and looked like she was in distress.

5

based on these statements, the jury could have reasonably found that Davidson and Delva knew of their passengers' illegal immigration status and intentionally transported them. Knowledge could also be inferred from Appellants' suspicious behavior when they encountered the police. At trial, a CBP officer testified that Davidson did not initially stop the truck when he came to the roadblock, but instead tried to drive around it. Another officer testified that when the truck finally came to a stop, Delva exited the vehicle and fled on foot. This evasive behavior could reasonably give rise to an inference of illegal activity and knowledge of its illegality.

For these reasons, we find that the evidence was sufficient to support both Davidson and Delva's convictions under 8 U.S.C. § 1324(a)(1)(A)(ii).

### 2. Assault of a Federal Officer with a Deadly Weapon

A defendant is guilty under 18 U.S.C. § 111(a)(1) if he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title when engaged in or on account of the performance of official duties." Under § 111(b), there is an enhanced penalty when a deadly or dangerous weapon is used. A car may be used as a deadly weapon. *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004) (citing *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992)); *see also United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (noting that a car may be a deadly weapon where it is not merely used as "a mode of transportation" or "purely for flight").

As the District Court explained, the testimony of two CBP officers showed that Davidson had driven the truck towards them and "failed to stop immediately despite repeated commands to do so." (App. 15-16.) The truck only stopped after an officer drew

6

his gun and pointed it at the vehicle. We agree with the District Court that, "[f]rom this evidence, a rational jury could reasonably conclude that Davidson intentionally used his car in a deadly or dangerous manner to forcibly assault, resist, oppose, impede, intimidate, or interfere with CBP officers while engaged in the performance of their official duties." (App. 16.) Although Davidson testified at trial that he failed to come to an immediate stop when he encountered the CBP officers because of an anti-locking mechanism in his brakes, a reasonable jury could have found his testimony to lack credibility. As such, the District Court properly denied Davidson's motion for a judgment of acquittal with respect to Count Two.

## B. Admission of Davidson's Statement

Davidson argues, for the first time, that the probative value of his statement to the CBP upon his arrest that he had been driving with a friend who had instructed him to "pick up people," was outweighed by its prejudicial effect and should have been excluded under Rule 403 of the Federal Rules of Evidence.[4] At trial, only Delva's lawyer objected to the introduction of this statement. We therefore review the District Court's decision to admit Davidson's statement through the testimony of the CBP officer for plain error. *See United States v. Moore,* 375 F.3d 259, 262 (3d Cir. 2004). Davidson argues that admission of the CBP officer's testimony was unfairly prejudicial because, "[h]er testimony implied defendant Delva was referring to the illegal aliens" when he asked

---

[4] Prior to trial, Davidson's lawyer only objected to the introduction of any "comment by [Davidson] saying he received money from Mr. Delva for transporting aliens." (J.A. 41.) On appeal, Davidson does not appear to take issue with the District Court's ruling on the admission of that statement.

7

Davidson to pick up "people." Davidson's Br. 18. We find no error in the admission of this statement. The statement goes to show that Davidson did not randomly come across a family in distress and pick them up but rather, had a pre-arrangement with Delva to pick up a group of people. The high probative value of this statement clearly outweighed any potential prejudice to Davidson. Therefore the statement was properly admitted.

## C. Jury Instruction on Defense of Justification

We review a district court's refusal to give a particular jury instruction for abuse of discretion. *United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008). "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Virgin Islands v. Lewis*, 620 F.3d 359, 364 (3d Cir. 2010) (internal quotation marks omitted); *see also United States v. Mike*, 655 F.3d 167, 175 (3d Cir. 2011) (noting that court is not obligated to give a requested jury instruction where defendant's evidence is legally insufficient to establish the proffered defense). We view the facts in the light most favorable to Davidson in determining whether there was evidence to support the defense of justification. *See Lewis*, 620 F.3d at 364.

The District Court interpreted Davidson's request for a justification defense to concern Count Two, however, Davidson appears to argue that he was entitled to the justification defense on Count One. *See* Davidson's Br. 15. To the extent that the District Court properly interpreted Davidson's request, we affirm the District Court's decision to deny the request for substantially the same reasons stated in the Court's memorandum opinion. Even if Davidson believed he was entitled to a jury instruction on the

8

justification defense with respect to Count One, however, the District Court did not abuse

its discretion in denying his request.

To establish the affirmative defense of justification, a defendant must show:

First, that [the defendant] was under an immediate, unlawful threat of death or serious bodily injury to himself or to others;

Second, that [the defendant] had a well-grounded [or reasonable] fear that the threat would be carried out if he did not commit the offense;

Third, that [the defendant's] criminal action was directly caused by the need to avoid the threatened harm and that [the defendant] had no reasonable, lawful opportunity to avoid the threatened harm without committing the offense; that is, that [the defendant] had no reasonable lawful opportunity both to refuse to do the criminal act and also to avoid the threatened harm; and

Fourth, that [the defendant] had not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct.

*United States v. Taylor*, 686 F.3d 182, 186 (3d Cir. 2012) (quoting Third Cir. Model

Crim. Jury Instr. § 8.04). To carry his burden, the defendant must prove the elements of

the defense by a preponderance of the evidence. *United States v. Dodd*, 225 F.3d 340,

347 (3d Cir. 2000). Here, Davidson has not shown that there was sufficient evidence to

meet his burden. In fact, there was no evidence at trial to establish the first element of the

justification defense – that is, there was no evidence of "an immediate, unlawful threat of

death or serious bodily injury to himself or to others." *Taylor*, 686 F.3d at 186. Even if

the pregnant woman that Davidson aided by transporting her was in distress, as he

alleges, there was no evidence that any threat of death or bodily injury was "unlawful."

On this element alone, Davidson's justification defense would have failed. The District

Court, therefore, properly omitted the jury instruction on the defense.

9

D. Voir Dire on Testimony of Law Enforcement Officers

We review the District Court's conduct during voir dire for abuse of discretion. *United States v. Cunningham*, 694 F.3d 372, 392 (3d Cir. 2012). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "'Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire*.'" *Cunningham*, 694 F.3d at 393 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981)).

Davidson argues that the District Court abused its discretion in failing to question prospective jurors on whether they would give more weight to the testimony of law enforcement officers than to that of civilian witnesses. He says that since the Government had no evidence independent of the testimony of the CBP officers on Count Two, the jury's determination as to the officers' credibility was crucial for a conviction. Davidson argues that an inquiry into prospective jurors' potential law enforcement bias was, therefore, necessary to "adequately probe [for] the possibility of prejudice." *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993).

We have held that "'where government law enforcement agents are apt to be key witnesses, the trial court, particularly if seasonably requested, should ordinarily make inquiry into whether prospective jurors are inclined to have greater faith in the agents' testimony merely by virtue of their official positions.'" *Butler v. City of Camden*, 352

10

F.3d 811, 817 (3d Cir. 2003) (quoting *United States v. Victoria-Peguero*, 920 F.2d 77, 84 (1st Cir. 1990)) (internal alterations omitted). Failure to engage in such an inquiry may be harmless, however, where "the trial court's charge to the jury may have remediated any prejudice." *Id.* at 818.

Here, the District Court's instruction to the jury prior to their deliberation effectively mitigated any prejudice Davidson may have suffered during the jury selection process. The District Court gave the following instruction:

> You've heard the testimony of law enforcement officials. The fact that a witness may be employed by the government as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.
>
> At the same time, it is quite legitimate for defense counsel to try to attack the credibility of law enforcement witnesses on the grounds that their testimony may be colored by a personal or professional interest in the outcome of the case.

(App. 243-44.) We assume that jurors "follow the law as instructed by the court." *Butler*, 352 F.3d at 818. Therefore, any harm suffered by Davidson as a result of an inadequate voir dire was cured through the District Court's jury charge. The District Court did not abuse its discretion.

### III.

For the reasons set forth above, we will affirm Davidson and Delva's judgments of conviction.

11