## Commonwealth v. Trego

*Theodore B. Smith, III,* assistant district attorney, for the Commonwealth.
*Carol Munson,* for defendant.

BAYLEY, *J.,* October 12, 1984—Defendant was convicted in a non-jury trial of resisting arrest pursuant to 18 Pa. C.S. §5104 which provides:

"A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, *or employs means justifying or requiring substantial force to overcome the resistance.*" (Emphasis added.)

Defendant maintains that the evidence produced at trial was insufficient to sustain the verdict. In re-

viewing that evidence the test is whether, reading it in a light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, the Commonwealth has proven all the elements of the offense beyond a reasonable doubt. Commonwealth v. Contakos, 492 Pa. 465, 424 A.2d 1284 (1981).

The evidence in this case was as follows:

1. On June 1, 1984, at approximately 6:50 p.m., Trooper Gerald Henneman of the Pennsylvania State Police went to defendant's residence to arrest him under a valid arrest warrant issued by a district justice. The trooper was in uniform and had arrived at the residence in a marked State Police car.

2. After defendant had exited his residence he was told by Trooper Henneman that he would have to accompany him to the office of the district justice. At that point defendant told the trooper, "Fuck you, I'm not going anywhere with you."

3. Defendant then turned around and "hurried" toward his trailer. The trooper ran up behind him, at the same time pulling out his handcuffs and grabbing defendant by the left arm.

4. Then, as the trooper testified:

A. He spun around and pulled, and as he swung he had the right arm down and as he come around, as I turned him, I grabbed the other arm so there would be no swing or no punch or anything. I held his hand and both arms by the wrists. I did manage to get the handcuff on the left hand, but I couldn't get it on the right hand. He was struggling and pulling, trying to get away from me. He spun around in a circle to try to get away from me and I pulled him back to his car and threw him against the car on his face to try to get the handcuffs behind him, and as I did that I had to pull the left hand behind his back so I could reach around and get the right hand. He turned around to his right, counter-clockwise, and which made him facing me again.

Q. Then what happened?

A. I struggled with him more at that time and got him pushed back against his car, the hood of the car, and sort of leaned him over the car, and with him back over the car I finally got the second hand-cuff on the other arm.

Q. Now, when you say him leaning back over the car, then was he facing the car or was his back to the car?

A. His back was then to the car at that time.

Q. And in what fashion were you causing him to lean backward against that car?

A. Well, it was my force against him trying to get those handcuffs on. I was trying to lean over to get the upper hand on him to get the handcuffs on him because of the struggle. He was struggling severely to get away from me.

Q. Did you cuff him in front or in back?

A. I cuffed him in front, I couldn't get him turned around to get them behind. That's what I attempted to do first. I thought the best thing to do is to get them on then I know I have him.

Q. So your intention was to cuff him behind his back but you were unable to do that?

A. Right.

5. After the trooper got defendant cuffed he placed him in his patrol car. He then noticed that blood was running down his own finger. This cut which occurred during the struggle with defendant did not require medical attention but was sore for about four days.

6. This incident took anywhere from one to three minutes.

7. Defendant did not strike out at the trooper with any kind of punching movements.

The trial judge found defendant guilty of resisting arrest upon the following statement:

"I find beyond a reasonable doubt that the officer was affecting (sic) a lawful arrest and that the defendant's conduct was such that required the officer substantial force to overcome his resistance, and, accordingly, those elements of the resisting statute have been met, and, accordingly, I find the defendant guilty."

In interpreting section 5104 of the Crimes Code, a Superior Court panel in Commonwealth v. Rainey, 285 Pa. Super. 75, 426 A.2d 1148 (1981), citing Commonwealth v. Meo, 233 Pa. Super. 483, 334 A.2d 748 (1975), held that the following factual situation constituted a "minor scuffle" involving an attempt "to shake off the policeman's detaining arm," and since defendant neither struck, struck out, kicked or pushed the officer, his actions did not constitute a violation of §5104. The facts of Rainey were as follows:

"Officer Hockley roused the appellant and placed him under arrest. Appellant ignored the officer and attempted to leave, but was restrained from doing so by the officer's grip on appellant's neck and belt. Officer Brown entered the apartment and placed appellant against the wall for frisking. He then escorted appellant to a waiting police van, while Officer Hockley spoke with the second floor tenant and, by telephone, with the building's owner. The walk to the van was uneventful but once reaching it, appellant attempted to run away. Officer Brown pursued and grabbed appellant by the sleeve of his coat. Appellant began to shake himself violently, to wiggle and squirm in an attempt to free himself of the officer's grasp. Corporal Neubaum arrived on the scene and proceeded to strike appellant on the head with his nightstick, inflicting a wound which later required six stiches. Even after the blow to his head, appellant continued his aforesaid conduct. Officer

Brown then grabbed appellant by the throat choking him to such an extent that he was obliged to release his grip lest appellant succumb for lack of air. While choking appellant Officer Brown struck his knee against the curb, slightly reinjuring the joint, which had then only recently been operated upon. Finally, Officer Hockley came to the assistance of Officer Brown and Corporal Neubaum. The three then subdued appellant and handcuffed him. By their own testimony, Officers Brown and Hockley admitted that at no time during the fracas did appellant strike, push or kick anyone, but merely attempted to squirm, wiggle, twist and shake his way free of their grasp. Officer Brown's fall came about as a result of his attempt to hold onto appellant's throat and not through any agressive act on the appellant's part."

In Commonwealth v. Eberhardt, 304 Pa. Super. 222, 450 A.2d 651 (1982), the facts were as follows:

"The incident occurred at the home of the appellant. Three Pittsburgh police officers, in possession of an arrest warrant for appellant, went to his residence and were admitted into the home by appellant's brothers and sisters. A search of the second floor revealed appellant lying underneath a bed. After the officers removed appellant from underneath the bed, he began to scuffle with them, claiming he was not Anthony Eberhardt. The scuffle proceeded into the living room and then downstairs into the dining room. During the scuffle, much furniture was overturned and one of the officers sustained a bruise on his forearm. Appellant, finally breaking free, darted to the third floor of the home, exited through a window onto a porch, and successfully fled the area."

The Superior Court panel reversed defendant's conviction for resisting arrest under §5104 upon the following statement:

"The court in Rainey refers to section 208.31 of the Model Penal Code (Tent. Draft No. 8), pp. 128-29 as its primary source of authority. The court also cites Commonwealth v. Meo, 233 Pa. Super. 483, 334 A.2d 748 (1975), which involved a defendant charged with resisting arrest under the Act of June 24, 1939, P.L. 872 §314, 18 P.S. §4314, which differed substantially from the current section 5104 of the Crimes Code. The former section sets forth specific factual instances in which the crime of resisting arrest would apply. The language now found in section 5104 is not identifiable anywhere in the former section. We will therefore not place any reliance on Commonwealth v. Meo, supra, for support.

It can hardly be said that a substantial risk of bodily injury was created for anyone during the incident of the instant case. While furniture was overturned and one of the officers sustained a bruise on his arm, appellant's actions were only attempts to escape and not an agressive assertion of physical force by appellant against the officers. At no time did appellant strike or kick anyone, he only attempted to free himself from the officer's grasps.

It also cannot be argued that appellant could be found guilty of the second part of section 5104, namely, employing means justifying or requiring substantial force to overcome the resistance, since appellant was not charged with this part of section 5104 in the information.

Therefore, this court is reluctantly bound to apply the Rainey court's analysis and hold that the evidence in the instant case was insufficient to sustain the verdict. We must qualify this holding, however, with the recognition that reliance on Commonwealth v. Meo, supra, is misplaced, as discussed supra."

In the present case defendant was found guilty only of the latter section of the resisting arrest statute which imposes criminal culpability on a defendant if, with the intent of preventing a lawful arrest, he "employs means justifying or requiring substantial force to overcome the resistance." We agree with the Commonwealth that the evidence in this case supports defendant's conviction under this section of the statute even though it would not have supported a conviction under the former section of the statute which imposes criminal culpability on a defendant who, with the intent of preventing a lawful arrest, "creates a substantial risk of bodily injury to the public servant or anyone else." Our examination of the Rainey decision reveals that the Superior Court panel in that case made no attempt to differentiate the two separate categories of criminal culpability set forth in §5104 which are written in the disjunctive.

The Superior Court panel in Eberhardt did recognize that §5104 provides for two separate types of criminal culpability; however, unlike the present case, the Commonwealth failed to charge defendant under the second section of the statute which provides culpability when a defendant "employs means justifying or requiring substantial force to overcome the resistance." We conclude that we are authorized to apply the reasoning set forth in Eberhardt in determining the sufficiency of the evidence to convict this defendant where the finder of fact specifically held, beyond a reasonable doubt, that defendant did employ means justifying or requiring substantial force by Trooper Henneman to overcome the resistance of defendant in the process of effecting his arrest. Our position is further supported by a Superior Court panel decision in Commonwealth v. Miller, 327 Pa. Super. 154, 475 A.2d 145 (1984). In that

case the court specifically rejected any dicta in Commonwealth v. Rainey, supra, that an essential element of the crime of resisting arrest is that defendant strike or kick the arresting officer. The court sustained a conviction for resisting arrest pursuant to §5104 on the following facts:

"John McEwen, a township police officer, told appellant in the parking lot that he would be cited for disorderly conduct, that he would be frisked, and that he would be released as soon as a citation had been prepared. Appellant yelled that he was being arrested to his brother, who was with Officer McCurdy, another policeman, in another portion of the parking lot. Appellant then began to struggle with McEwen. When McEwen, assited by Lt. Rager, attempted to grab and pinion his arms, appellant struggled by flailing his arms and by moving the upper part of his body horizontally back and forth in a rapid manner which the policeman demonstrated to the jury. Appellant also attempted to 'push through' McEwen to go to the aid of his brother who had begun to struggle with McCurdy. McEwen and Lt. Rager then attempted to place handcuffs on appellant, but he resisted their efforts by 'straining' against them with his arms and upper part of his body. He continued to struggle as the police officers attempted to place him in the rear of a police car. To get him in the car, police found it necessary to lift appellant from the ground and physically push him into the rear of the police vehicle. As a result of the struggle, McEwen received a bruise of his lower right leg."

An analysis of the legislative scheme set forth in the Pennsylvania Crimes Code further supports our conclusion in this case. Resisting arrest under §5104 does not require that defendant assault or attempt to assault the police officer or other person

when an arrest is being made unlike the simple assault statute, 18 Pa.C.S. §2701, which either requires an attempt to cause, an intential causing, or the negligently causing of bodily injury or the requirement that the victim be placed in fear of imminent serious bodily injury. Furthermore, attempts to cause or causing either bodily injury or serious bodily injury to a police officer making or attempting to make a lawful arrest specifically constitute aggravated assaults graded as either a misdemeanor in the first degree or a felony in the second degree pursuant to 18 Pa. C.S. §2702. All assaults under §2701 and §2702 are defined by the legislature as "offenses involving danger to persons." Resisting arrest is defined as a "Public Administration Offense" constituting the "Obstruction of Governmental Operations." Even the first section of §5104 does not require an attempt to inflict or the actual infliction of bodily injury on the police officer; it only requires that the person being lawfully arrested does something that creates a "substantial risk" of bodily injury to the police officer. The second section of §5104, under which this defendant was convicted, does not require even a substantial risk of bodily injury to a police officer, much less an assault. To the contrary, as set forth by the Superior Court in Commonwealth v. Eberhardt, supra, this section only requires that the police officer, in attempting an arrest, employ means justifying or requiring his substantial force to overcome the resistance of defendant.

That is exactly what occurred in this case. The basis for imposing criminal culpability under this section is premised upon a legislative determination that the administration of justice should allow a police officer to be able to effectuate a lawful arrest without having to employ substantial force to do so.

Obviously, if the officer faces undue risk of bodily injury as a result of defendant's actions, that also constitutes the crime and, if the officer is in fact assaulted, it constitutes the more serious crime of aggravated assault upon a police officer. Resisting arrest under §5104 is only graded as a misdemeanor in the second degree.

The Rainey court referred to defendant's conduct in that case as being disorderly under 18 Pa. C.S. §5503. It may have been but the legislature has defined that offense as being "An Offense Against Public Order." The definition of disorderly conduct does not contain language referring to conduct which requires a police officer to use substantial force in making an arrest because such conduct has been specifically set forth in §5104 as constituting a more serious crime involving the "obstruction of governmental operations." Thus, disorderly conduct is only graded as a misdemeanor in the third degree or a summary offense in §5503(b).

The legislative scheme in defining different degrees of criminal culpability regarding a defendant's conduct against a police officer when effecting a lawful arrest, which conduct constitutes a greater offense than disorderly conduct, but a lesser offense than an assault against a police officer, serves a legitimate purpose of effecting the orderly administration of justice. Since defendant's conduct in this case required Trooper Henneman to use substantial force to overcome his resistance in effecting a lawful arrest, his conviction under the second section of 18 Pa. C.S. §5104, has been proven beyond a reasonable doubt.

## ORDER OF COURT

And now, this October 12, 1984, defendant's motion for a new trial and an arrest of judgment are denied.