UNITED STATES of America

v.

Melvin STINSON, a/k/a Tank Melvin
Stinson, Appellant.

No. 08–1717.

United States Court of Appeals,
Third Circuit.

Originally Submitted Under Third Circuit
LAR 34.1(a) on July 6, 2009.

Opinion Filed July 28, 2009.

Vacated Sept. 24, 2009.

Argued on Panel Rehearing Oct. 8, 2009.

Filed Jan. 14, 2010.

Thomas F. Burke, Law Office of William J. Brennan, Philadelphia, PA, for Appellant.

Robert A. Zauzmer (Argued), Assistant United States Attorney, Chief of Appeals, Maria M. Carrillo, Assistant United States Attorney, Philadelphia, PA, for Appellee.

Sarah S. Gannett, Assistant Federal Defender, David L. McColgin (Argued), Supervising Appellate Attorney, Leigh M. Skipper, Chief Federal Defender, Federal Community Defender Office for Defender Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Amici Curiae.

Before: SLOVITER, AMBRO, and JORDAN, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This matter is before us on this court's grant of the petition for panel rehearing filed on behalf of Appellant Melvin Stinson supported by Amici Curiae Federal Public and Community Defender Organizations for each District in the Third Circuit. Because our prior opinion was vacated with the order granting rehearing, we include here the relevant facts.

## I.

Stinson, who was arrested by local police in a Philadelphia bar pursuant to an arrest warrant for failing to appear in court, was found to be in possession of 23 glass vials of cocaine base, totaling approximately 1.5 grams, and a .357 Magnum revolver. Thereafter, Stinson pled guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

The presentence investigation report ("PSR") found Stinson to be a career offender under the 2006 United States Sentencing Guidelines based on his 1998 conviction for distribution of a controlled substance and his 1994 conviction in Pennsylvania for "simple assault." The PSR also noted that Stinson had been convicted in Pennsylvania of resisting arrest. The District Court agreed that Stinson was a

career offender and, as a result, gave Stinson an enhanced offense level of 32, but deducted 3 points for acceptance of responsibility. As a career offender, Stinson had a criminal history category of VI and received a Guidelines range of 262 to 327 months imprisonment. He was sentenced to 262 months, the bottom of the range. This matter is before us on Stinson's challenge to that sentence.[1]

When this matter was originally before us, Stinson claimed that the District Court (1) incorrectly considered his simple assault crime to be a crime of violence under the relevant sentencing provisions and (2) did not reasonably apply the 18 U.S.C. § 3553(a) factors when determining his sentence. *See United States v. Stinson*, 574 F.3d 244, 245 (3d Cir.2009), *vacated*, 2009 U.S.App. LEXIS 21202, at *1 (3d Cir.2009). Stinson conceded that the District Court's conclusion that his simple assault conviction qualified as a crime of violence was required after our precedent in *United States v. Dorsey*, 174 F.3d 331 (3d Cir.1999), noting in his brief that "it would seem to be difficult to distinguish *Dorsey* from the case at bar, factually." Appellant's Br. at 10. He argued only that "[t]he District Court must make a specific finding as to whether the offense of conviction [i.e., the simple assault] established a crime of violence by reference to the charged conduct [in the assault charge]." Appellant's Br. at 12. We do not understand Stinson to have argued that the sentencing court should inquire into the specific conduct of this particular offender, which would be contrary to the Supreme Court's direction that courts must apply the categorical approach to classify a prior conviction. *See Taylor v. United States*, 495 U.S. 575, 600–02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Under that approach,

a court must ask "whether the *elements of the offense* are of the type that would justify its [classification as a crime of violence]." *James v. United States*, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007).

Where a statute criminalizes different kinds of conduct, some of which would constitute crimes of violence while others would not, the court must apply a modified categorical approach by which a court may look beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted. *See Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *Evanson v. Att'y Gen.*, 550 F.3d 284, 290–91 (3d Cir.2008); *see. also United States v. Smith*, 544 F.3d 781, 786 (7th Cir.2008) ("Such an examination . . . is '*only* to determine which part of the statute the defendant violated.'" (quoting *United States v. Howell*, 531 F.3d 621, 623 (8th Cir.2008))).

After the briefs in the original appeal were filed, the Supreme Court issued its opinion in *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). *Begay* interpreted the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), which imposes a special mandatory prison term on a felon who unlawfully possesses a firearm and who has three or more prior convictions for committing certain drug crimes or "violent felon[ies]." Under the ACCA:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by

---

**1.** We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. "We exercise plenary review over questions of law, such as whether a crime is a crime of violence." *United States v. Hull*, 456 F.3d 133, 137 (3d Cir.2006).

imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e)(2)(B). *Begay* focused on the meaning of the latter clause, i.e., "or otherwise involves conduct that presents a serious potential risk of physical injury to another," which has been called "the residual clause." *See* 128 S.Ct. at 1586.

In our original opinion we declined to address the effect of *Begay* on the District Court's characterization of Stinson's conviction for simple assault as a crime of violence under U.S.S.G. § 4B1.1(a), reasoning that it was "an issue that would benefit from initial briefing and exploration before a trial judge [in light of the subsequent decision in *Begay*]." *Stinson,* 574 F.3d at 246. We nevertheless affirmed the sentence on the basis that resisting arrest, of which Stinson was also convicted, was a crime of violence under the Sentencing Guidelines.

Thereafter, another panel of this court decided the issue of the characterization of "simple assault" that we had declined to reach in *Stinson* and held that "an intentional or knowing violation of the [Pennsylvania simple assault statute] is a crime of violence under U.S.S.G. § 4B1.2(a)(2)." *United States v. Johnson,* 587 F.3d 203, 212 (3d Cir.2009). Under the Pennsylvania simple assault statute, a person is guilty who "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another." 18 Pa. Cons.Stat. Ann. § 2701(a)(2). Although the criminal information charged Johnson with intentional and knowing conduct, the *Johnson* court

was unable to decide whether Johnson's simple assault conviction was a crime of violence because it was unclear, "based on the information alone, whether Johnson actually admitted to acting intentionally or knowingly." *Id.* In light of the Government's position "that reckless conduct, standing alone, is not the type of purposeful conduct that can constitute a crime of violence under § 4B1.2(a)(2)'s residual clause," we vacated Johnson's sentence and remanded to the sentencing court. *Id.* at 210. We included a reminder that the Supreme Court's decision in *Shepard* foreclosed the court from inquiring into the facts underlying the earlier conviction but required the court to determine the part of the Pennsylvania simple assault statute to which Johnson pled guilty. *Id.* at 209.

In this case, as in *Johnson,* the record fails to show the part of Pennsylvania's simple assault statute on which Stinson's 1994 conviction was based. We therefore turn from the simple assault issue to analyze instead whether Stinson's conviction for resisting arrest qualifies as a categorical crime of violence. If so, the District Court did not err in denominating Stinson a career offender.

**II.**

In his motion for panel rehearing, Stinson raises three challenges to his sentence. He argues that the Pennsylvania resisting arrest statute, 18 Pa. Cons.Stat. Ann. § 5104, is not a categorical crime of violence after *Begay;* that the court should not have affirmed the career offender sentence based on Stinson's prior conviction for resisting arrest; and that the court's holding that resisting arrest is a crime of violence is at odds with *United States v. Hopkins,* 577 F.3d 507 (3d Cir.2009).

We turn to consider these arguments.

Under the United States Sentencing Guidelines:

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.2(a) (2006) (emphasis added). The definition in the Sentencing Guidelines is sufficiently similar to the definition of a violent felony under the ACCA that authority interpreting one is generally applied to the other. *See Hopkins,* 577 F.3d at 511. Therefore, we are guided by the Supreme Court's decision in *Begay* analyzing the term "violent felony" under the ACCA.

That decision also underlies our analysis of Stinson's challenge to the District Court's characterization of him as a career offender. Under the Sentencing Guidelines, Stinson is a career offender if he: (1) was at least eighteen years old when the instant offense occurred; (2) the instant offense of conviction is a crime of violence or a controlled substance offense; and (3) he "has at least two prior felony convictions of *either a crime of violence* or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2006) (emphasis added). The first two requirements are satisfied as Stinson was at least 18 years old and the instant offense of conviction was a controlled substance offense. We therefore focus on the third requirement: Stinson's prior convictions.

Stinson has prior convictions for distribution of a controlled substance, simple assault, and resisting arrest. Stinson does not challenge that his 1998 conviction for distribution of a controlled substance qualifies as a prior conviction for career offender purposes. In light of our elimination of simple assault at this stage, if we are to affirm Stinson's sentence, as the Government urges, we must find that resisting arrest under Pennsylvania law is a crime of violence.

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court considered how prior convictions should be analyzed for career offender purposes. After careful consideration, it concluded that a court should apply a categorical approach, and "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143. We thus look to the statutory definition of resisting arrest under Pennsylvania law.

[2] The Pennsylvania Code states that: A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person [1] creates a substantial risk of bodily injury to the public servant or anyone else, or [2] employs means justifying or requiring substantial force to overcome the resistance.

18 Pa. Cons.Stat. Ann. § 5104 (2006).

The Pennsylvania statute specifies two types of conduct by which a defendant could resist arrest. One specified conduct is when the defendant resists arrest by "creat[ing] a substantial risk of bodily injury" to the officer or another. *Id.* This is "conduct that presents a serious potential risk of physical injury to another," and thus fits squarely within the definition of a crime of violence in the residual clause of U.S.S.G. § 4B1.2(a)(2) (2006). The other specified conduct of resisting arrest under the Pennsylvania statute is the action of a defendant who "employs means justifying or requiring substantial force to overcome the resistance." 18 Pa. Cons.Stat. Ann.

§ 5104. In order to ascertain whether this conduct fits within the Guidelines definition of a "crime of violence," we must focus on whether it also falls within the residual clause of U.S.S.G. § 4B1.2(a), that is whether it "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (2006).

Justice Breyer's opinion in *Begay* provides needed clarity on the residual clause. As explained there, the conduct falls within the residual clause if it poses a degree of risk that is similar to the degree of risk posed by the enumerated offenses ("burglary of a dwelling, arson, extortion [or] involves use of explosives"), and is similar in kind to those offenses. *Begay*, 128 S.Ct. at 1586. *Begay* further explains that an offense is similar in kind to the enumerated offenses if it "typically involve[s] purposeful, violent, and aggressive conduct." *Id.* (internal quotations and citations omitted). This leads us to inquire whether the second specified conduct in the Pennsylvania resisting arrest statute, i.e., "employ[ing] means justifying or requiring substantial force to overcome the resistance," 18 Pa. Cons.Stat. Ann. § 5104, involves "purposeful, violent, and aggressive conduct," *Begay*, 128 S.Ct. at 1586 (internal quotations and citations omitted).

We conclude that it does. Such conduct poses as great or greater a risk as burglary or extortion. Unlike those enumerated offenses, resisting arrest necessarily involves confronting the authority of a police officer who is likely armed and charged with defending the public. Because the police officer is duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, correspondingly, a significant risk of injury.

Resisting arrest by "employ[ing] means justifying or requiring substantial force to overcome" is, by definition, purposeful, aggressive and violent. 18 Pa. Cons.Stat. Ann. § 5104. It is "purposeful" because

under the statute the crime must have been "with *the intent* of preventing a public servant from effecting a lawful arrest or discharging any other duty...." *Id.* (emphasis added). The refusal to yield to a public official's exercise of authority creates a substantial risk of injury and is at least as aggressive and violent as burglary of a dwelling. When "employ[ing] means justifying or requiring *substantial force* to overcome," an arrestee is knowingly engaging in conflict with another. *Id.* (emphasis added).

Stinson counters that conduct that may fall within the second clause of the Pennsylvania resisting arrest statute could permit conviction for passive resistance, behavior that meets neither of *Begay*'s standards of violence and aggressiveness. To support his expansive view of the statute, Stinson relies heavily on a single case, *Commonwealth v. Thompson*, 2007 PA Super 101, 922 A.2d 926 (2007). Although defendant in that case contended that she used "passive resistance" to the officers' attempts to place her in custody after she and her husband "interlocked their arms and legs and refused to respond to the [officer's] verbal commands to release their hands," 922 A.2d at 927, it is evident that the Pennsylvania Superior Court focused on other conduct. The court looked to "the statutory language of section 5104 criminalizing resistance behavior that requires substantial force to surmount." *Id.* at 928.

The question whether a defendant committed the offense, i.e., guilty or not, must be distinguished from the question whether the Pennsylvania offense is a categorical crime of violence. The defendant in *Thompson* was hardly passive as she argued. She "approached [the officer], yelling and waving her hands in an attempt to scare the horse [on which he was riding] ... [and] hit the horse's nose, causing the

animal to rear up." *Id.* at 927. Moreover, the defendant in *Thompson* "struggl[ed] with the officers for a few minutes." *Id.* Thus, Thompson's behavior squarely fit within the Pennsylvania resisting arrest statute.

The Pennsylvania courts have not construed the resisting arrest statute to cover passive resistance. Passive resistance is the antithesis of an act of violence. Protestors who gather in large numbers or in small groups to support a cause, whether it be animal rights, opposition to abortion, more vigorous environmental enforcement, or the conflict in Afghanistan, and who passively resist when the authorities seek to dissolve the group, are not engaging in violent or aggressive action.

Although the language of Pennsylvania's resisting arrest statute "does not require the aggressive use of force such as striking or kicking of the officer," *Commonwealth v. Miller,* 327 Pa.Super. 154, 475 A.2d 145, 146 (1984), we have found no decision under Pennsylvania law that affirmed a conviction for resisting arrest based on a defendant's inaction or simply "lying down" or "going limp." Counsel arguing before us on this appeal could cite to none in response to our questions. In fact, there are several cases in which Pennsylvania courts have recognized that resisting arrest does not extend to "minor scuffle[s] incident to an arrest." *Commonwealth v. Rainey,* 285 Pa.Super. 75, 426 A.2d 1148, 1150 (1981); *see also Miller,* 475 A.2d at 146 ("The intent of [Pennsylvania's resisting arrest statute] is 'to confine the offense to forcible resistance that involves some

substantial danger to the person.'" (quoting *Pa. Crimes Code Ann.* § 5104 (1974))).[2] It is only when a defendant who was "struggling and pulling, trying to get away from [the arresting officer who was physically restraining him]," that he was convicted of resisting arrest, and such cases are rare. *Commonwealth v. Trego,* 33 Pa. D. & C.3d 352, 353 (Pa.Ct.Com.Pl.1984).

Having satisfied ourselves that the crime of resisting arrest in Pennsylvania does not encompass passive resistance, we must determine whether the "ordinary" or "typical" fact scenario underlying resisting arrest convictions in Pennsylvania is sufficiently "purposeful, violent, and aggressive" to qualify as a crime of violence after *Begay.* See *Begay,* 128 S.Ct. at 1586 (noting that the enumerated crimes all "typically" involve purposeful, violent, and aggressive conduct); *see also James v. United States,* 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) ("[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another" comparable to the enumerated offenses). We conclude that the "ordinary" case meets this definition. Our examination of the statute and the Pennsylvania cases interpreting it demonstrates why that is so.

We therefore affirm the District Court's holding that Stinson was a career offender, but we do so on the alternate ground that his prior conviction for resisting arrest, a categorical crime of violence, provided the

---

**2.** We need not dwell on Stinson's argument that our conclusion that resisting arrest is a crime of violence is contrary to our opinion in *Hopkins,* 577 F.3d at 515, where we held that second degree misdemeanor "escape" pursuant to 18 Pa. Cons.Stat. Ann. § 5121 does not qualify as a crime of violence for career offender purposes. The information to which

Hopkins pled guilty charged that he "unlawfully remove[d] himself from official detention or fail[ed] to return to official detention following temporary leave granted for a specific purpose or limited period." *Hopkins,* 577 F.3d at 513. We held that misdemeanor escape "is conduct materially less violent and aggressive than the enumerated offenses."

second predicate offense to his designation as a career offender.[3]

*Id.* at 514. Such is not the case with resisting arrest.

**3.** For the reasons set forth, we reject Stinson's contention that we would benefit from further briefing or record development at the trial level.