NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 08-4677

—————————

UNITED STATES OF AMERICA

v.

DENNIS MASS, Appellant

—————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 1-08-cr-00547-001)
District Judge: Honorable Robert B. Kugler

—————————

Submitted Under Third Circuit LAR 34.1(a)
October 1, 2009

Before: AMBRO, GARTH and ROTH, Circuit Judges

(Opinion filed: June 3, 2010)

—————————

OPINION

—————————

AMBRO, Circuit Judge

Dennis Mass pled guilty to one count of conspiracy to distribute, and possess with

intent to distribute, heroin. He was sentenced to 262 months' imprisonment. In this

appeal, he brings two challenges to his sentence: 1) that he was inappropriately sentenced

as a career offender under the Sentencing Guidelines; and 2) that the District Court

abused its discretion by not departing downward. We reject both of these challenges, and therefore affirm.

I.

Prior to his arrest, Mass led a large drug-trafficking organization, mass-purchasing heroin and cocaine and then selling it to mid-level distributors. The Drug Enforcement Agency ("DEA") began investigating Mass's organization in June 2007 in conjunction with state and local law enforcement. The investigation included interviews with related parties, a confidential source, recorded telephone calls and meetings, phone-record analysis, a court-authorized wiretap, physical surveillance, seizures of money, and hand-to-hand purchases of cocaine and heroin directly from Mass.

Based on interviews with the confidential source, law enforcement determined that Mass operated several "drug sets" throughout Camden, New Jersey, with the bulk of his drug sales involving street-level distribution of heroin. According to the confidential source, Mass usually purchased heroin in bulk quantities of 200, 300, and 500 grams and then sold it to mid-level traffickers in increments of $65-$70 per gram. During the investigation, the CS recorded several drug-related conversations with Mass, made a number of controlled purchases of heroin (totaling over 100 grams), and purchased approximately one kilogram of cocaine directly from Mass.

In January 2008, law enforcement set up surveillance at Mass's residence in New Jersey. Eventually, officers saw Mass leave his residence, carrying a multi-colored bag. He placed the bag in the cargo area of his vehicle and then drove off. Officers then pulled

2

over Mass's vehicle. During that stop, a narcotics-trained dog detected drugs in the vicinity of a cardboard box that was found in the multi-colored bag. An officer opened the heavily taped box and found money hidden underneath two shirts. All told, the box contained $246,825. Mass was then arrested.

In August 2008, Mass pled guilty to one count of conspiring to distribute, and possess with intent to distribute, one kilogram or more of heroin, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), as well as 21 U.S.C. § 846. As noted, the District Court sentenced him to 262 months' imprisonment, which, based on a career offender designation, was within his advisory Sentencing Guidelines range of 262-327 months. Mass appealed, challenging his designation as a career offender under the Sentencing Guidelines, as well as the Court's failure to grant a downward departure. We consider each argument in turn.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Whether a particular crime is one of violence is a question of law, which is subject to plenary review. *United States v. Dorsey*, 174 F.3d 331, 332 (3d Cir. 1999). We also exercise plenary review over questions concerning our own jurisdiction. *United States v. Cooper*, 437 F.3d 324, 332-33 (3d Cir. 2006).

## III.

We disagree that Mass was inappropriately sentenced as a career offender. Under

3

the Sentencing Guidelines, a defendant qualifies as a career offender if he: "(1) was at least eighteen years old when the instant offense occurred; (2) the instant offense of conviction is a crime of violence or a controlled substance offense; and (3) he 'has at least two prior felony convictions of *either a crime of violence* or a controlled substance offense.'" *United States v. Stinson*, No. 08-1717, 2010 WL 114949, at *3 (3d Cir. Jan. 14, 2010) (*quoting* U.S.S.G. § 4B1.1(a)) (emphasis in original). Mass concedes that the crime for which he was sentenced in this case was a controlled substance offense. He also does not dispute that he had one prior controlled substance conviction and that he was over 18 years old when he committed the offense before us. Thus, the sole question on appeal is whether any of his other convictions—one for simple assault and two for resisting arrest—were crimes of violence, as defined by the Sentencing Guidelines. The District Court concluded that Mass's third-degree resisting arrest conviction from February 2001 qualified as a crime of violence. We agree.[1]

Under the Sentencing Guidelines:

> The term "crime of violence" means any offense . . .
> punishable by imprisonment of a term exceeding one year,
> that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives,

---

[1] Since this conclusion is dispositive, we do not consider whether Mass's other conviction under a different provision of the New Jersey resisting arrest statute, or his conviction for simple assault, similarly constituted a crime of violence.

or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In determining whether a conviction qualifies as a crime of violence, we apply a "categorical approach," "ask[ing] 'whether the *elements of the offense* are of the type that would justify its [classification as a crime of violence].'" *Stinson*, 2010 WL 114949 at *1 (*quoting James v. United States*, 550 U.S. 192, 202 (2007)) (emphasis in original). In this, we "look only to the fact of the conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990).

In the current case, the text of the New Jersey resisting arrest statute closely tracks that of the "crime of violence" definition in the Sentencing Guidelines.

The New Jersey statute reads in relevant part:

a.      (1) . . . [A] person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest.

. . .

(3) An offense under paragraph (1) . . . is a crime of the third degree if the person:

(a) Uses or threatens to use physical force or violence against the law enforcement officer or another; or

(b) Uses any other means to create a substantial risk of causing physical injury to the public servant or another.

N.J. Stat. Ann. § 2C:29-2.[2]  In this case, Mass pled guilty to third-degree resisting arrest, which required him either to "[u]se[] or threaten[] to use physical force or violence" against another or "[u]se[] any other means to create a substantial risk of causing physical injury to . . . another."  *Id.* § 2C:29-2.[3]  Textually, this is almost identical to the key provision of the Sentencing Guidelines, which (to repeat) defines a "crime of violence" as either "the use, attempted use, or threatened use of physical force against the person of another" or "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

This analysis is bolstered by our recent holding in *Stinson.*  We determined that a Pennsylvania conviction for resisting arrest qualified as a crime of violence for career offender purposes.[4]  Just as in *Stinson*, the conduct proscribed by statute in this appeal "poses as great or greater a risk as burglary or extortion," as "resisting arrest necessarily involves confronting the authority of the police officer who is likely armed and charged

---

[2] The indictment tracked the statutory language for third-degree resisting arrest: "Dennis J. Mass . . . did purposely prevent or attempt to prevent a law enforcement officer . . . from effecting a lawful arrest by using or threatening to use physical force or violence against said officer and/or did create a substantial risk of causing physical injury."  S.A. 44.

[3] Mass was sentenced to five years for the offense, to run concurrently with another sentence.

[4] The Pennsylvania statute provides that "[a] person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest . . . , the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance."  18 Pa. Cons. Stat. Ann. § 5104.

6

with defending the public." *Stinson*, 2010 WL 114949 at *4. "Because the police officer is duty-bound to effect[] the arrest, the offense engenders . . . a significant risk of injury." *Id.* At Mass's sentencing hearing, even defense counsel conceded that the similarities between the Pennsylvania and New Jersey resisting arrest statutes presented "a tough issue for the defense" and was "problematic" for Mass, noting that there was only a "minor difference" between these statutes and conceding that "there is certainly case law in the Government's favor." S.A. 3-4.

In the end, the District Court noted the similarities between the New Jersey statute and the "crime of violence" definition, explaining that "if you look at the New Jersey statute, you put it side by side with the [G]uideline, they match up almost identical[ly]." S.A. 5. Because of this, the Court concluded that whether Mass's conviction for third-degree resisting arrest under the New Jersey statute was a crime of violence was not "really a close question." S.A. 5.

We agree, especially in light of our recent holding in *Stinson*. Given the similarity between the conduct outlawed by the Pennsylvania and New Jersey statutes, as well as the definition of a "crime of violence," we hold that Mass's conviction for third-degree resisting arrest in New Jersey constitutes a "crime of violence" under the Sentencing Guidelines. Therefore, Mass qualifies as a career offender.

We turn to Mass's challenge to the District Court's refusal to grant a downward departure to the sentencing range initially calculated under the Sentencing Guidelines. "We continue to treat 'discretionary denials of departure motions in calculating

7

sentencing ranges' the same as we did pre-*Booker*." *United States v. Jones*, 566 F.3d 353, 366 (3d Cir. 2009) (*quoting United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006)). In other words, "[w]e do not have jurisdiction to review discretionary decisions by district courts to not depart downward." *United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007). "Jurisdiction arises, however, if the district court's refusal to depart downward is based on the mistaken belief that it lacks discretion to do otherwise." *Id.*

In this appeal, Mass claims that his criminal history category overstates the seriousness of his prior convictions and his likelihood of committing future crimes. At Mass's sentencing hearing, defense counsel argued that, although Mass "technically fit[]" the definition of a career offender, this designation "over-represents his criminal history," S.A. 6, as he had "no aggravated assaults" and "[n]o weapons offenses of any kind" (including "no gun offenses"), S.A. 7. Defense counsel asked the Court to "consider [these factors] in evaluating . . . whether [it] can deviate and find [Mass] . . . a criminal history five instead of six." S.A. 7-8.

In response, the District Court recognized its power to grant a downward departure, exercised its discretion, and refused to grant the proposed departure. It spoke directly

> as to the defendant's motion in this case for a downward departure, under [G]uideline 4[A]1.3, whether or not his criminal history substantially over-represents the seriousness of his actual conduct. Any future threat to society. I recognize clearly I have the discretion to entertain and grant this motion under the proper conditions. However, I'm going to deny the application . . . .

8

S.A. 15.  From there, the Court analyzed Mass's criminal history, observing that Mass had been convicted of three felonies and one "very serious non-felony conviction."  S.A. 16.  Given his number of offenses (as well as their close proximity to one another), it was clear that "the system hasn't gotten through to [Mass]."  S.A. 17.  Therefore, it concluded that Mass's criminal history did not "significantly over-represent[] the seriousness of his conduct and future threat to society."  S.A. 17.  This was a discretionary decision of the District Court that we lack jurisdiction to review.

For these reasons, we affirm the District Court's judgment as it pertain to Mass's designation as a career offender under the Sentencing Guidelines, and dismiss Mass's challenge to the District Court's discretionary decision not to depart downward for lack of jurisdiction.