**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2056
_____

UNITED STATES OF AMERICA

v.

TRISTAN GREEN,
                    Appellant
_____

On Appeal from the District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 1-11-cr-00361-001
(Honorable Christopher C. Conner)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2013

Before: HARDIMAN, SCIRICA, and NYGAARD, *Circuit Judges*

(Filed: November 14, 2013)

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge.*

Tristan Green appeals his jury conviction and 360-month sentence for armed bank

robbery.[1]  Green contends the District Court (1) abused its discretion in admitting certain pretrial identifications and (2) erred in admitting the reaction of Green's co-defendant to law enforcement questions about whether he knew Green. With regard to his sentence, Green challenges his classification as a Career Offender under the United States Sentencing Guidelines and the District Court's consideration of certain records at sentencing.  We will affirm.[2]

## I.

On September 16, 2011, two masked men entered Fulton Bank in Etters, Pennsylvania, brandished handguns, and demanded money.  They were given $13,761 in U.S. currency and fled in a black Chevrolet Blazer.  An eyewitness provided the Blazer's license plate number to police, who stopped the vehicle approximately an hour and a half after the robbery within fifteen miles of the bank.  Police identified the Blazer's driver and sole occupant as Willie Elmore and took him into custody.  A search of Elmore and the vehicle uncovered evidence linked to the robbery, including $2,559.09 in U.S. currency and a MapQuest printout providing directions from Brooklyn, New York to 1478 Whiteford Road, York, Pennsylvania.  The serial numbers of six bills found on Elmore's person matched those of "bait bills" taken by the robbers from Fulton Bank. Green's grandparents resided at the 1478 Whiteford Road address.

---

[1] Green was found guilty of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d) and using a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A).

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

During questioning following Elmore's arrest, FBI Special Agent Christopher Nawrocki attempted to show Elmore a photograph of Green, but Elmore would not look at the photograph and repeatedly denied involvement in the bank robbery. When Nawrocki mentioned Green's name to Elmore, Elmore quickly snapped his head around and began asking questions before verbally denying he knew Green.

On September 24, 2011, Sergeant Steven Lutz of the Newberry Township, Pennsylvania, Police Department conducted separate photographic line-ups with two witnesses who had seen one of the robbers lower his mask to yell at employees and customers during the robbery. Sergeant Lutz prepared two arrays of eight photographs each, one including Elmore and one including Green. He used a computer program to select photographs of other individuals arrested in Pennsylvania and New York and filter those photographs for similar characteristics to the suspects, including age at arrest, facial hair, hair color, hair length, hair style, race, sex, and skin tone. From approximately 35,000 photographs matching Green's characteristics, Sergeant Lutz testified he attempted to select individuals closely matching Green's appearance from the first approximately twenty selection screens of eight photographs each. He placed Green's photograph randomly in the array with photographs of seven other individuals. When shown the array, one witness identified Green after approximately two minutes. The other witness identified Green after approximately fifteen minutes. Neither witness identified Elmore.

A grand jury indicted Green and Elmore on one count of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d) and one count of using a firearm during a

3

crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).  On March 1, 2012, the

District Court denied Green's motion to suppress the evidence of his identification from

the photographic arrays.  On August 17, 2012, following a four-day joint trial, Green and

Elmore were convicted on both counts.

The United States Probation Office classified Green as a Career Offender under

the  Guidelines. Accordingly, it determined Green's offense level to be 34 and criminal

history category to be VI in the Presentence Investigation Report and calculated a

Guidelines range of 360 months to life in prison.  Green's classification as a Career

Offender rested in part on his 2009 conviction for assaulting, impeding, or resisting a

federal officer in violation of 18 U.S.C. § 111.  Green objected to this 2009 conviction

being considered a "crime of violence" for purposes of classifying him as a Career

Offender, contending 18 U.S.C. § 111 encompasses both violent and nonviolent conduct

and properly reviewable documents did not show his conduct amounted to a "crime of

violence."  On April 2, 2013, the District Court discounted Green's objections and

sentenced him to a prison term of 360 months.  On appeal, Green challenges both his

conviction and sentence.

## II.

Green contends the photographic array and procedure by which the two witnesses

identified him were unnecessarily suggestive and the identification evidence should have

been suppressed.  Specifically, Green contends the photographic array was unnecessarily

suggestive because (i) only Green's photo displayed parted hair and comparatively thick

braids or dreadlocks in the front or side of the head and (ii) only Green was shown in

4

light-colored clothing.[3]  The District Court disagreed and admitted the identification evidence on the ground the array was not unduly suggestive.  We will affirm the District Court.[4]

A pre-trial identification procedure violates a defendant's constitutional right to due process when the procedure both (1) is unnecessarily suggestive and (2) creates a substantial risk of misidentification.  *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977)).  Unnecessary suggestiveness "contains two component parts:  that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures."  *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991) (quoting 1 W. LaFave & J. Israel, Criminal Procedure § 7.4(b) (1984)) (internal quotations and emphasis omitted).  If a defendant fails to show the photographic identification procedure was unnecessarily suggestive, we are not required to assess the second element—whether the identification procedure creates a substantial risk of misidentification.  *See Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012) ("[T]he Due

---

[3] Green offers two additional arguments regarding the identification procedures:  (1) Sergeant Lutz's selection of the photographs introduced a risk of bias and (2) the police failed to use a less suggestive means of identification without good cause.  Both arguments lack merit.  Green fails to present any evidence of bias, and we do not believe an in-person line-up or serial presentation of photographs would have constituted less suggestive means in this instance than the procedure the police used.

[4] We review the District Court's decision to admit evidence of pre-trial identification for abuse of discretion.  *United States v. Emanuele*, 51 F.3d 1123, 1127 (3d Cir. 1995).  Where a motion to suppress has been denied, we review the order "for clear error as to the underlying facts, but exercise plenary review as to its legality in the light of the court's properly found facts."  *United States v. Inigo*, 925 F.2d 641, 656 (3d Cir. 1991).

Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."); *United States v. Mathis*, 264 F.3d 321, 331 (3d Cir. 2001).

Photographic arrays are not unnecessarily suggestive solely because certain characteristics of a defendant or photograph set him apart from others. *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991) (holding a photographic array was not unnecessarily suggestive when defendant was the only one shown with sideburns and a card with name and height), *superseded on other grounds by statute*, 28 U.S.C. § 2254(d); *United States v. Dowling*, 855 F.2d 114, 117 (3d Cir. 1988) (finding a six-person photographic array was not unduly suggestive when defendant was the only one wearing a red t-shirt because some of the other men also wore colored t-shirts and all individuals "were reasonably comparable in dress and appearance"), *aff'd*, 493 U.S. 342 (1990). The key question is whether differences in characteristics "sufficiently distinguish" a defendant to suggest culpability. *Reese*, 946 F.2d at 260.

Here, we find the differences do not sufficiently distinguish Green to suggest culpability. Although the eight individuals depicted in the photographic array had minor differences in hair style and clothing, we agree with the District Court they are of similar appearance. Green is shown with thicker braids than the individuals in the other photographs, but he is not the only individual depicted with braids or a unique hairstyle. Nor is Green the only person wearing a light-colored shirt. Another individual is wearing a light-colored shirt under a dark-colored jacket. And of those individuals wearing dark-

6

colored clothing, one is wearing a patterned shirt and another a shirt without a collar.
Because the photographic array was not unnecessarily suggestive, the District Court did
not abuse its discretion in admitting the identifications of Green into evidence.

**III.**

Green also contends the District Court violated his rights under the Sixth
Amendment's Confrontation Clause by admitting testimony of his co-defendant Elmore's
reaction to law enforcement questions about Elmore's familiarity with Green. The
District Court deemed Elmore's response to be an involuntary reaction, not a statement,
and accordingly not hearsay admitted in violation of the Confrontation Clause. We
agree.[5]

The Sixth Amendment guarantees the right of an accused "to be confronted with
the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause bars the
use of the confession of a nontestifying criminal defendant in a joint trial to the extent
that it directly inculpates a co-defendant. *Bruton v. United States*, 391 U.S. 123, 126
(1968). Moreover, where the declarant does not appear at trial, the Confrontation Clause
bars the introduction of a testimonial, out-of-court statement unless the declarant is
unavailable at trial and the defendant had a prior opportunity to cross-examine the
declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Davis v. Washington*, 547
U.S. 813, 821 (2006). The Confrontation Clause is not implicated, however, if there is no
testimonial statement by an out-of-court declarant. *See Davis*, 547 U.S. at 821 (finding

---

[5] We exercise plenary review over Confrontation Clause challenges but review non-constitutional challenges to the admission of hearsay for abuse of discretion. *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012).

7

only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause"); *United States v. Berrios*, 676 F.3d 118, 127 (3d Cir. 2012) (noting we must first determine "whether the contested statement by an out-of-court declarant qualifies as testimonial").

Although nonverbal conduct may be considered a statement if it is intended as an assertion, FED. R. EVID. 801(a); *United States v. Ryan*, 828 F.2d 1010, 1017 (3d Cir. 1987), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997), the key to the definition of a statement is that "nothing is an assertion unless intended to be one." FED. R. EVID. 801(a), 1972 advisory committee's note. Although Rule 801 does not define "assertion," "the term has a connotation of a positive declaration." *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990). The burden is on the party claiming the intention to assert existed, and ambiguous cases should be resolved in favor of admissibility. FED. R. EVID. 801(a), 1972 advisory committee's note.

We are not persuaded Elmore intended his reaction upon being asked whether he knew Green to be an assertion. Elmore's refusal to look at Green's photograph, head turn, and asking questions upon mention of Green's name appear more "purely physical" than intentional nonverbal communicative acts. *United States v. Rivera*, 944 F.2d 1563, 1569 (11th Cir. 1991) ("[T]here are difficult levels of gradation between types of human behavior that constitute a purely physical act and behavior that is solely a communication."). Moreover, although testimony regarding Elmore's reaction may have permitted an inference of association between Elmore and Green, Special Agent Nawrocki also testified Elmore verbally denied robbing the bank and knowing Green.

8

We are doubtful Elmore intended to assert nonverbally the opposite of what he asserted verbally, especially since doing so would have incriminated him in the crime. Because Elmore did not intend his reaction as an assertion, his reaction is not a statement, and the District Court properly admitted testimony regarding Elmore's reaction.[6]

## IV.

With regard to his sentence, Green challenges his classification as a Career Offender under Section 4B1.1 of the Guidelines. Specifically, he alleges the District Court erred in finding his 2009 conviction for assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111 to be a crime of violence and thus a predicate offense under the Guidelines for the Career Offender enhancement.[7] Green also contends the District Court improperly relied on certain records in applying the modified categorical approach at sentencing. We will affirm Green's sentence.[8]

---

[6] Even assuming Elmore's reaction was a statement intending to assert familiarity with Green, there is no *Bruton* issue here. *Bruton* involved a co-defendant's extrajudicial confession or other "powerfully incriminating" statement. *Bruton*, 391 U.S. at 135–36. Elmore's reaction was neither a confession nor a "powerfully incriminating" statement of Green's involvement, since Elmore repeatedly denied robbing the bank and denied knowing Green during questioning. *See United States v. Belle*, 593 F.2d 487, 493 (3d Cir. 1979) ("When a codefendant's extrajudicial statement does not directly implicate the defendant, however, the *Bruton* rule does not come into play.").

[7] A defendant is considered a Career Offender under the Guidelines if (1) he is at least 18 years old at the time of the instant offense, (2) the instant offense is a felony crime of violence, and (3) the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense. Green's 2009 conviction for violating 18 U.S.C. § 111 was one of the two predicate offenses used to classify him as a Career Offender.

[8] Our review of questions of law, such as whether a crime is a "crime of violence" under the Guidelines, is plenary. *United States v. Stinson*, 592 F.3d 460, 462 n.1 (3d Cir. 2010).

9

The Guidelines define a "crime of violence" as any offense under federal or state law punishable by a prison term of over one year that (1) has as an element the use, attempted use, or threatened use of physical force against another, or (2) is burglary of a dwelling, arson, extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. USSG § 4B1.2(a). To determine whether an offense of conviction amounts to a crime of violence, we presumptively apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Stinson*, 592 F.3d 460, 464 (3d Cir. 2010). Under the categorical approach, we "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* (quoting *Taylor*, 495 U.S. at 602). In "a narrow range of cases" where a statute criminalizes both violent and non-violent conduct and a sentencing court cannot tell, without reviewing something more, if the jury found or defendant pleaded guilty to elements that would be a crime of violence, we apply the modified categorical approach. *Descamps v. United States*, 133 S. Ct. 2276, 2283–84 (2013) (quoting *Taylor*, 495 U.S. at 602); *Stinson*, 592 F.3d at 462 (noting under the modified categorical approach courts may "look beyond the statutory elements to determine the particular part of the statute under which the defendant was actually convicted").

The statute at issue, 18 U.S.C. § 111, penalizes six different acts and distinguishes between felony and misdemeanor conduct—the latter punishable by up to one year in prison. Accordingly, we cannot determine solely from the face of the statute if violation of § 111 is a "crime of violence." *See United States v. Chapman*, 528 F.3d 1215, 1218 (9th Cir. 2008) (describing § 111(a) as "inartfully drafted"). But applying the modified

10

categorical approach, we readily conclude Green's conviction to be a crime of violence.

Since Green was sentenced to 27 months in prison for violating § 111, Green was convicted of felony conduct. *See* 18 U.S.C. § 111 (noting felony conduct under § 111 is punishable by up to eight years in prison but misdemeanor conduct by only up to one year). Because he was convicted of felony conduct under the statute, § 111 will fit the definition of "crime of violence" if it (1) has as an element the use, attempted use, or threatened use of physical force against another or (2) otherwise involves conduct that presents a serious potential risk of physical injury to another. *See* USSG § 4B1.2(a). We find violation of § 111 to be a "crime of violence" under both definitions.

Section 111 is violated when one "forcibly assaults, resists, opposes, impedes, intimidates, or interferes" with a federal officer in the performance of his or her official duties. 18 U.S.C. § 111(a). The adverb "forcibly" modifies all the verbs in the text of the statute. *United States v. Goodwin*, 440 F.2d 1152, 1154 (3d Cir. 1971) (citing *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952) ("The use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the adverb is to be interpreted as modifying them all.")); *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002). Accordingly, some form of forcible conduct is required for violations of § 111. *United States v. Williams*, 602 F.3d 313, 317 (5th Cir. 2010); *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009); *Arrington*, 309 F.3d at 44; *see also Goodwin*, 440 F.2d at 1154 (finding

11

forcible conduct under § 111 to "require more than mere passive resistance").[9] The

statute therefore "has as an element the use, attempted us, or threatened use of physical

force against another."[10]

We also find violation of § 111 "otherwise involves conduct that presents a serious

potential risk of physical injury to another." *See* USSG § 4B1.2(a). In evaluating

identical language in the Armed Career Criminal Act, 18 U.S.C. § 924(e), the Supreme

Court instructed to determine whether violation of the offense at issue is similar in risk to

the offenses enumerated in what the Court termed the "residual clause"—burglary of a

dwelling, arson, extortion, or explosives offenses. *Sykes v. United States*, 131 S. Ct.

2267, 2275–76 (2011).[11] Our reasoning in *Stinson*, which held violation of the

---

[9] Because our conclusion that forcible conduct is required to violate § 111 is sufficient to decide the issue before us, we need not decide whether some manner of assaultive conduct is also necessary to violate the statute, an issue that has divided the Courts of Appeals. *Compare, e.g.*, *Chapman*, 528 F.3d at 1219, *and United States v. Hathaway*, 318 F.3d 1001, 1008 (10th Cir. 2003) (finding some assaultive conduct required to violate § 111), *with Williams*, 602 F.3d at 317, *and Gagnon*, 553 F.3d at 1026 (holding assaultive conduct is not necessary to violate § 111).

[10] Even if we found the statute penalizes both violent and nonviolent conduct, as Green urges, our conclusion would not change. As set forth in the change of plea hearing transcript, Green admitted to engaging in a scuffle with federal officers attempting to arrest him. Accordingly, we would find Green pleaded guilty to elements of the offense amounting to a "crime of violence."

[11] In interpreting the residual clause, we previously considered whether the offense involved "purposeful, violent, and aggressive conduct." *United States v. Polk*, 577 F.3d 515, 518–19 (3d Cir. 2009) (quoting *Begay v. United States*, 553 U.S. 137, 144–45 (2008)). But *Sykes* cast doubt on *Begay*'s "purposeful, violent, and aggressive" standard, instructing instead to examine levels of risk. *See Sykes*, 131 S. Ct. at 2275 ("The phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause . . . .").

12

Pennsylvania resisting arrest statute constitutes a crime of violence under the Guidelines, is persuasive. *See* 592 F.3d at 464. We found because "resisting arrest necessarily involves confronting the authority of a police officer who is likely armed and . . . duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, correspondingly, a significant risk of injury." *Id.* at 465. Accordingly, we conclude violation of § 111 is similar in risk to the offenses enumerated in § 4B1.2(a)(2) of the Guidelines and constitutes a crime of violence.

Because we find Green's conviction for violating 18 U.S.C. § 111 to be a crime of violence under the Guidelines, we will affirm the District Court's decision to classify him as a Career Offender and the resulting sentence imposed.[12]

## V.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

[12] Green also contends the District Court relied on improper evidence in applying the modified categorical approach. Green's argument lacks merit. The District Court was entitled to rely on Green's admission he engaged in a scuffle with federal officers, as set forth in the change of plea hearing transcript, to determine Green was convicted of the elements of a § 111 offense amounting to a "crime of violence." *See Shepard v. United States*, 544 U.S. 13, 21–23 (2005) (holding a sentencing court may examine the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented).